FILED

December 15 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0136

DA 15-0136

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 344

TETON CO-OP CANAL CO.,

       Claimants and Appellees,

    v.

TETON COOP RESERVOIR CO.,

       Objector and Appellant,
and

LOWER TETON JOINT OBJECTORS,
FARMERS COOP CANAL CO.,

       Objectors.

APPEAL FROM:    Water Court of the State of Montana
                Cause No. 41O-132, Honorable Douglas Ritter, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

          Holly Jo Franz, Ada C. Montague, Franz & Driscoll, PLLP, Helena,
          Montana

       For Appellees:

          John E. Bloomquist, Bloomquist Law Firm, Helena, Montana

                           Submitted on Briefs:  October 21, 2015
                                Decided:  December 15, 2015

Filed:

                                   _____
                                           Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Teton Cooperative Reservoir Company (Teton Reservoir) appeals a February 3, 2015 order of the Montana Water Court in Case 41O-132, adjudicating Teton Co-Operative Canal Company's (Teton Canal) water rights to the Eureka Reservoir. We address the following issue on appeal:

> *Whether the Water Court erred in determining that off-stream water storage in the Eureka Reservoir was included as part of Teton Canal's April 18, 1890 Notice of Appropriation.*

¶2 We reverse and remand for further proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 Teton Canal was formed in 1903 for the purpose of appropriating, transporting, storing, and using water for irrigation in Teton County. It and Teton Reservoir are among several water supply entities that distribute water to shareholders from the Teton River northwest of Choteau, Montana. Numerous other water users also divert water from this stretch of the Teton River. Teton Canal's predecessors in interest filed a number of notices of appropriation for water right claims on the Teton River, including an April 18, 1890 Notice of Appropriation (1890 Notice) and an April 29, 1891 Notice of Appropriation (1891 Notice). The Notice of Appropriation under which Teton Canal claims its priority date for the Eureka Reservoir is the 1890 Notice.

¶4 In the 1890 Notice, Teton Canal's predecessors claimed 3,000 inches of Teton River water for the "special purpose" of "gathering said water in a reservoir and using it to irrigate adjacent lands in Township number 25 North of Range 4 and 5 west." The

2

1890 Notice describes the point of diversion as "a point upon [the Teton River's] north bank six hundred sixty five feet from the [southeast] corner of the [southwest quarter] of Section thirty[-]one (31) Township Twenty[-]five (25) North of Range five (5) West . . . ."

¶5     In the 1891 Notice, Teton Canal's predecessors claimed 10,000 inches of Teton River water for "irrigating, reservoirs, and other purposes." The 1891 Notice describes the point of diversion as beginning "upon [the Teton River's] north bank about 1015 feet south 34º west from the [northwest] corner of Section (36) Thirty[-]six T[ownship] 25 North, R[ange] 6 West . . . ."

¶6     After filing the 1890 Notice, Teton Canal's predecessors immediately began constructing the Glendora Canal. They eventually formed the Eureka Reservoir Canal and Irrigation Company (Eureka Company). In 1892, the Eureka Company filed an application and plat map with the U.S. General Land Office (GLO) for its water supply and distribution system. The GLO approved the application and plat map in September 1892. The 1892 plat map both depicts the irrigation system the Eureka Company intended to develop and provides legal descriptions for the canals the company had developed by 1892.[1]

---

[1] The map shown is a portion of the 1892 plat map included in the record. We have marked the diversion points with arrows for ease of reference.

3



¶7     On the 1892 plat map, the Eureka Company's engineer attested that the Glendora Canal had been built under his supervision.  The plat map described the Glendora Canal as "beginning at a point on the north bank of the Teton River . . . from which the quarter Section corner on the south side of Sec[tion] 31, T[ownship] 25 N[orth], R[ange] 5 W[est] bears N[orth] 47º 25' W[est] 698 feet distant . . . ."  The Glendora Canal's diversion point depicted and described on the 1892 plat map corresponds to the diversion point described in the 1890 Notice.[2]  The 1892 plat map depicts the Glendora Canal running to the Glendora Reservoir.

¶8     The Eureka Company's engineer similarly attested on the 1892 plat map that Teton Canal's predecessors constructed the Eureka Canal[3] under his supervision.  The plat map describes the Eureka Canal as "beginning at a point on the north bank of the

---

[2] Although the legal descriptions in the 1890 Notice and the 1892 plat map are not identical, each describes a point in the northeast quarter of the northwest quarter of Section 6, Township 24 North, Range 5 West, that corresponds to the point depicted on the plat map.

[3] The "Eureka Canal" is also referred to as the "Burton Ditch" in various documents throughout the record.  Both parties refer to the canal as the "Eureka Canal" in their briefing and we will do the same.

Teton River in the Northeast quarter (N.E. ¼) of Section 35, T[ownship] 25 N[orth], R[ange] 6 W[est] . . . from which the Northeast corner of Sec[tion] 36, T[ownship] 25 N[orth], R[ange] 6 W[est] bears N[orth] 85º 58' E[ast] 6641 feet distant . . . ." The Eureka Canal's diversion point depicted and described on the 1892 plat map corresponds to the diversion point described in the 1891 Notice.[4] The 1892 plat map both describes and depicts the Eureka Canal's diversion point approximately two miles upstream from the Glendora Canal's diversion point.

¶9     In 1893, the Eureka Company sold its assets, including its water rights, to the Montana Land and Water Company, which in turn transferred all of its assets to Russell Shepherd in 1902. Shepherd later was named as a defendant in a district court case adjudicating water rights on the Teton River. *Perry v. Beattie*, Cause No. 371 (Mont. 11th Judicial Dist., March 28, 1908). In his answer to the complaint, Shepherd asserted water rights based on three notices of appropriation—including both the 1890 Notice and the 1891 Notice. During the *Perry* litigation, Shepherd transferred his interest in the irrigation assets, including the water rights, to Teton Canal. In 1908, the *Perry* court decreed that Teton Canal "is entitled to the use of three thousand inches of the waters of said Teton River of date April 18th, 1890." It is undisputed that Teton Canal's claims under the 1891 Notice did not survive the *Perry* decree.

---

[4] Although the legal descriptions in the 1891 Notice and the 1892 plat map are not identical, each describes a point in the northwest quarter of the northeast quarter of Section 35, Township 25 North, Range 6 West, that corresponds to the point depicted on the plat map.

5

¶10     The 1892 plat map depicts the Eureka Canal running to the Eureka Reservoir in Section 31, Township 25 North, Range 6 West.  In 1909 and again in 1926, GLO representatives investigated the Eureka Reservoir site.  Although the representative who inspected the Eureka Reservoir site in 1909 recommended "final approval of this reservoir site," by 1926 another GLO inspector reported that "no reservoir has been built where it was intended to construct the Eureka reservoir . . . ."  The inspector recommended that Teton Canal should "state what their intentions are as to the Eureka site," and suggested that the GLO "call on [Teton Canal] to file proof of ownership, and proof of construction" of the Eureka Reservoir.  The inspector further reported that Teton Canal's Secretary "expressed the opinion that [Teton Canal] was interested in the Eureka site and probably would use it later."

¶11     Teton Canal demonstrated its interest in developing the Eureka Reservoir site at various stockholder and director meetings in the early 1920s.  Based on these discussions, Teton Canal filed a notice of appropriation with a priority date of October 11, 1921, (1921 Notice) for 100 cubic feet per second (cfs) of the flood waters of the Teton River.  The 1921 Notice's stated purpose was "for storing water in [a] reservoir located in Sec[tions] 36-25 T[ownship] 25 N[orth] R[ange] 6 W[est], and Sec[tion] 31 T[ownship] 25 N[orth] R[ange] 5 W[est]."  This description corresponds with the Eureka Reservoir's current location and its location depicted on the 1892 plat map.  The 1921 Notice also described the point of diversion as "upon [the Teton River's] north bank . . . in the Northeast ¼ of the Northeast ¼ of Section 35 T[ownship] 25 N[orth] R[ange] 6 W[est]."

6

The diversion point described in the 1921 Notice corresponds with the diversion point described in the 1891 Notice and the Eureka Canal's diversion point described and depicted on the 1892 plat map.

¶12     After filing the 1921 Notice, Teton Canal's stockholders rejected a proposal to create an irrigation district to finance the Eureka Reservoir's development.  Following the 1926 GLO inspection, minutes of the December 16, 1926 Board of Directors meeting indicate that the board directed Teton Canal's officers to obtain further information as to the company's right in the reservoir site and to "find out and do what is necessary to hold the right."  It appears that Teton Canal's stockholders did not again discuss developing the Eureka Reservoir site until January 1934.  In September 1936, the stockholders eventually approved "putting $400 per share" toward developing a reservoir.  The stockholders voted to apply to the State Water Conservation Board for a loan "of $25,000 for building [a] Reservoir," and to turn over the reservoir site to the Water Conservation Board.

¶13     The Water Conservation Board filed a declaration of intention to store, control, and divert water on December 3, 1936 (1936 Declaration).  Under the 1936 Declaration, the Water Conservation Board claimed the unappropriated waters of the Teton River by "means of the 'Teton Cooperative Canal Company Project.'"  The 1936 Declaration stated, "Said waters will be appropriated by means of a diversion ditch, dam and storage reservoir."  It described the point of diversion as a "ditch located in [the southeast quarter] of Section 35, Township 25 north of range 5 West."  In January 1982, Teton

7

Canal's President signed an affidavit stating that the diversion point's legal description in the 1936 Declaration was a misprint and that the actual diversion point was located in the northeast quarter of the northeast quarter of the northeast quarter of Section 35, Township 25 North, Range 6 West. This point corresponds to the Eureka Canal's diversion point as described on the 1892 plat map, the 1891 Notice, and the 1921 Notice. The 1936 Declaration further described the dam and reservoir as being "located in Section 25, township 25 north, range 6 west." This location corresponds to the Eureka Reservoir's current location and to its general depiction on the 1892 plat map.

¶14 Teton Canal and the Water Conservation Board jointly constructed the Eureka Reservoir from 1936 to 1937. In November 1946, the Water Conservation Board turned over ownership of the Eureka Reservoir to Teton Canal. The Eureka Reservoir originally had a storage capacity of 4,000 acre feet. In 1947 and 1957, the dam was expanded to increase the Eureka Reservoir's storage capacity to its current 5,500 acre feet.

¶15 When Teton Canal filed its statement of claim for existing water rights in 1982 as required by the Montana Water Use Act of 1973, it claimed the following distinct water rights: two claims (irrigation and stock) under the decreed 1890 Notice at a flow rate of 75 cfs; two claims (irrigation and stock) under the filed 1921 Notice at a flow rate of 100 cfs; and two claims (irrigation and stock) under the filed 1936 Declaration for unappropriated water. All six claims appeared in the Temporary Preliminary Decree for the Teton River Basin with the same priority date (April 18, 1890), source, period of

diversion, period of use, point of diversion (the Eureka Canal),[5] and place of use. Teton Reservoir and the Lower Teton Joint Objectors objected to all six claims. Farmers Cooperative Canal Company (Farmers Canal) filed and subsequently withdrew its objections to Teton Canal's three irrigation claims. The Water Master consolidated all of the parties' objections in August 2008. The Lower Teton Joint Objectors reached a settlement agreement with Teton Canal and accordingly withdrew their objections. Teton Reservoir was therefore the single remaining objector. The Water Master held a hearing on October 1 and 2, 2012.

¶16  Under Rule 53(e)(1), M. R. Civ. P., and Rule 23, W. R. Adj. R., the master is to "prepare a report upon the matters submitted to the master by the order of reference." The presiding Water Master was appointed as an Associate Water Judge for the Water Court in September 2013; therefore, the Associate Water Judge proceeded to issue a Water Court order rather than a water master's report. The Water Court issued its order adjudicating Teton Canal's claims on February 3, 2015.

¶17  The Water Court concluded that Teton Canal's water right claims for the Eureka Reservoir were properly administered under the 1890 Notice. The court further concluded that later additions to the Eureka Reservoir constituted expansions of the original appropriation that must be reflected in more junior water right claims.[6] The

---

[5] The Temporary Preliminary Decree describes the point of diversion as the northeast quarter of the northwest quarter of the northeast quarter of Section 35, Township 25 North, Range 6 West, the same point described on both the 1892 plat map and the 1891 Notice.

[6] The priority dates the Water Court assigned to these expansions are not challenged on appeal.

court determined that Teton Canal's total annual volume for all claims is 14,000 acre feet, that its period of use for all claims runs from April 20 to October 14, and that its historical place of use totals 17,322 acres with a 7,650 acre limit on annual irrigation. Finally, the court determined that Teton Canal's stockwater claims are valid reflections of historical use. Teton Reservoir appeals.

## STANDARD OF REVIEW

¶18 We review the Water Court's findings of fact to determine if they are clearly erroneous. *Skelton Ranch, Inc. v. Pondera Cnty. Canal & Reservoir Co.*, 2014 MT 167 ¶ 26, 375 Mont. 327, 328 P.3d 644 (citation omitted). A finding is clearly erroneous if it is not supported by substantial evidence, if the Water Court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been made. *Skelton Ranch, Inc.*, ¶ 27 (citations omitted). We review the Water Court's conclusions of law to determine if they are correct. *Skelton Ranch, Inc.*, ¶ 26 (citation omitted).

## DISCUSSION

¶19 *Whether the Water Court erred in determining that off-stream water storage in the Eureka Reservoir was included as part of Teton Canal's 1890 Notice of Appropriation.*

¶20 Existing water rights are those rights that were acquired prior to the Montana Water Use Act's passage in 1973. Section 85-2-102(12), MCA; *Axtell v. M.S. Consulting*, 1998 MT 64, ¶ 23, 288 Mont. 150, 955 P.2d 1362. A properly filed statement of claim for an existing water right "constitutes prima facie proof of its content . . . ." Section 85-2-227(1), MCA; Rule 19, W. R. Adj. R. This prima facie validity may be overcome if the objector "prove[s] by a preponderance of the evidence

10

that the elements of the original claim 'do not accurately reflect the beneficial use of the water right as it existed prior to July 1, 1973.'" *Nelson v. Brooks*, 2014 MT 120, ¶ 37, 375 Mont. 86, 329 P.3d 558 (quoting W. R. Adj. R. 19). Since the Montana Water Use Act recognizes existing water rights, "pre-1973 law is still applicable in determining the existence and validity of water rights acquired before 1973." *Axtell*, ¶ 25.

¶21 Teton Canal properly filed its statement of claim for existing water rights in 1982; accordingly, the claim serves as prima facie evidence that the information contained in it is true. Section 85-2-227(1), MCA; Rule 19, W. R. Adj. R. It was therefore Teton Reservoir's "burden to show by a preponderance of the evidence that the information in the claim is incorrect." *Marks v. 71 Ranch, Ltd. P'ship*, 2014 MT 250, ¶ 16, 376 Mont. 340, 334 P.3d 373 (citation omitted).

¶22 On appeal, Teton Reservoir asserts that Teton Canal has no right to off-stream water storage in the Eureka Reservoir under the 1890 Notice because the evidence shows the following: that Teton Canal's predecessors developed the diversion point described in the 1890 Notice; that the 1890 Notice did not contemplate the Eureka Reservoir; that Teton Canal did not proceed with reasonable diligence in developing the Eureka Reservoir; and that Teton Canal's priority date for the Eureka Reservoir is based on the 1936 Declaration.

**The 1890 Notice and the Eureka Reservoir**

¶23 In concluding that the 1890 Notice included off-stream storage in the Eureka Reservoir, the Water Court relied, in part, on the following findings: that Teton Canal's

11

predecessors developed the 1890 Notice diversion point by building the Eureka Canal; and that Teton Canal's predecessors intended for the 1890 Notice to include the Eureka Reservoir. Teton Reservoir asserts that both of these findings are clearly erroneous.

¶24 Teton Reservoir first challenges the Water Court's finding that it failed to present sufficient evidence demonstrating that Teton Canal's predecessors developed the diversion point described in the 1890 Notice.

¶25 The Water Court addressed the development of the diversion point identified in the 1890 Notice in a single paragraph. The court found that the "actual point of diversion developed by [Teton Canal's predecessors under the 1890 Notice] was located about two miles further up the Teton River" than the diversion point described in the 1890 Notice. The court identified the actual diversion point developed under the 1890 Notice as the northeast quarter of the northwest quarter of the northeast quarter of Section 35, Township 25 North, Range 6 West.[7] The court cited to the 1892 plat map and to Teton Canal's expert's testimony in finding that the change in the point of diversion "was necessary to develop the Eureka Reservoir site." Based on these findings, the court concluded, "It does not appear [Teton Canal] ever developed the Section 31 diversion point referenced by the [1890 Notice]."

¶26 Teton Reservoir argues that the Water Court's finding is not supported by substantial evidence and that the court overlooked the evidence establishing that Teton Canal's predecessors developed the 1890 Notice diversion point by building the Glendora

---

[7] This location corresponds with the diversion point described in the 1891 Notice.

Canal. Teton Canal asserts generally that the Water Court's findings are not clearly erroneous, but it offers no record support for the court's finding that the diversion point described in the 1890 Notice was never developed. In fact, Teton Canal acknowledges in its briefing that "from the record presented, it appears that both the Eureka Canal and the Glendora Canal were constructed by [Teton Canal's] predecessors between April, 1890 and April, 1892."

¶27 The evidence establishes that the Glendora Canal is the diversion point described in the 1890 Notice. The 1892 plat map describes the Glendora Canal's diversion point as "beginning at a point on the north bank of the Teton River . . . from which the quarter Section corner on the south side of Sec[tion] 31, T[ownship] 25 N[orth], R[ange] 5 W[est] bears N[orth] 47º 25' W[est] 698 feet distant . . . ." This description corresponds to the diversion point described in the 1890 Notice—"a point upon [the Teton River's] north bank six hundred sixty five feet from the [southeast] corner of the [southwest quarter] of Section thirty[-]one (31) Township Twenty-five (25) North of Range five (5) West . . . ."

¶28 Other evidence in the record clearly demonstrates that Teton Canal's predecessors constructed the Glendora Canal and therefore developed the diversion point described in the 1890 Notice. A history of Teton Canal written by a past President states that after filing the 1890 Notice, Teton Canal's predecessors "immediately began building a ditch" that later would be named the Glendora Canal. On the 1892 plat map, the engineer for Teton Canal's predecessor affirmed that the Glendora Canal had "been constructed under

13

his supervision . . . ." The GLO representative who examined the Glendora Reservoir site in 1909 reported that "[t]his reservoir is a depression, natural lake bed, thru which main ditch of the Company runs . . . ." The ditch to which the representative referred is identified on the 1892 plat map as the Glendora Canal.

¶29 Testimony from Teton Canal's witnesses further demonstrates that Teton Canal's predecessors developed the diversion point described in the 1890 Notice by constructing the Glendora Canal. Although Teton Canal's expert, John Westenberg, testified that the Eureka Canal's construction was necessary to develop the Eureka Reservoir site, he also testified that the Glendora Canal is still "visible on the ground" and that "there's some remaining infrastructure connecting it with even the current ditch." Charles Crane, Teton Canal's Secretary-Treasurer, testified that the Glendora Canal was built and that "there's still remnants of it up there." Crane further testified that although the Glendora Reservoir is no longer part of Teton Canal's irrigation system, the reservoir is still used by a Teton Canal stockholder. This stockholder fills the Glendora Reservoir out of Teton Canal's current canal.

¶30 There is substantial, uncontradicted evidence in the record, some from Teton Canal's own witnesses, establishing that Teton Canal's predecessors developed the Glendora Canal at the diversion point described in the 1890 Notice. The 1892 plat map and John Westenberg's testimony do not contradict this evidence and do not support the Water Court's finding that Teton Canal's predecessors never developed the diversion

14

point referenced in the 1890 Notice. Accordingly, the Water Court's finding on this issue is clearly erroneous.

¶31 The Water Court's finding that Teton Canal's predecessors intended to include the Eureka Reservoir in the 1890 Notice depended, in part, on its finding that the diversion point referenced in the 1890 Notice was never developed and that it was relocated as necessary to develop the Eureka site. Teton Reservoir asserts that the evidence demonstrates that Teton Canal's predecessors did not intend that the 1890 Notice include the Eureka Reservoir and that the Eureka Canal constituted a new point of diversion that was intended to be included under the 1891 Notice.

¶32 Teton Reservoir's objections to the application of the 1890 Notice are "governed by pre-1973 law." *Marks*, ¶ 15. As such, the 1885 statutory appropriation act applies to the 1890 Notice. *Shammel v. Vogl*, 144 Mont. 354, 367, 396 P.2d 103, 110 (1964). In order for Teton Canal's claims to relate back to the 1890 Notice under the 1885 act, Teton Canal must have complied with the act's requirements. Section 81-812, RCM (1947) (repealed 1973) (providing in part that "by complying with the provisions of this chapter the right to the use of the water shall relate back to the date of posting the notice"); *Bailey v. Tintinger*, 45 Mont. 154, 171, 122 P. 575, 581 (1912) (concluding that "before the [1885 act] makes applicable the doctrine [of relation back], a completed appropriation must have been effected").

¶33 One of the essential statutory requirements under the 1885 act was properly filing a notice of appropriation. *Mont. Dep't of Natural Res. & Conservation v. Intake Water*

15

*Co.*, 171 Mont. 416, 430, 558 P.2d 1110, 1118 (1976) (hereafter *Intake*) (stating that "the posting and filing of the notice of appropriation is a condition precedent to a valid appropriation"). Among other things, a notice of appropriation provides other water users with notice of the appropriator's intent. We have long recognized the importance of an appropriator's intent at the time of appropriation. *E.g.*, *Power v. Switzer*, 21 Mont. 523, 530, 55 P. 32, 35 (1898) (concluding that "the intention of the claimant is therefore a most important factor in determining the validity of an appropriation of water"); *Bailey*, 45 Mont. at 178, 122 P. at 583 (concluding that if the 1885 act "does not by express terms, it does by fair implication, require that, at the time of taking the initial steps, the claimant must have an intention to apply the water to a useful or beneficial purpose"); *Wheat v. Cameron*, 64 Mont. 494, 501, 210 P. 761, 763 (1922) (determining whether an appropriation was completed and concluding that a "claimant's intent at the time of appropriation must be determined by his act and by surrounding circumstances, its actual and contemplated use, and the purpose thereof").

¶34 The Water Court found that Teton Canal's predecessors intended to develop multiple reservoirs, including the Eureka Reservoir, when they filed the 1890 Notice. In making this finding, the court relied on the 1890 Notice and the 1892 plat map. The court reasoned that the 1892 plat map showed "an extensive system of canals and ditches" and both the Eureka and Glendora Reservoirs. The court further found that Teton Canal established that the 1890 Notice included the development of two small reservoirs and the eventual development of the Eureka Reservoir. Based on these

16

findings, the court ultimately found that "[a] preponderance of the evidence shows that a sizable reservoir at the Eureka site was part of the intent of the [1890 Notice]."

¶35   On appeal, Teton Canal contends that the Water Court did not err in finding that its predecessors contemplated storage in the Eureka Reservoir under the 1890 Notice. Teton Canal asserts that substantial evidence supports the court's findings that Teton Canal's predecessors developed and maintained off-stream water storage under the 1890 Notice. The Eureka Reservoir, argues Teton Canal, simply consolidated the company's longstanding off-stream storage practices under the 1890 Notice into one place. Teton Canal relies on the 1890 Notice, the 1892 plat map, the GLO representatives' reports, and its stockholder and director meeting minutes from the 1920s and 1930s to support its assertion that the Water Court's findings are supported by substantial evidence.

¶36   Under the 1885 act, the 1890 Notice serves as prima facie evidence that the information contained in it is true. Section 89-814, RCM (1947) (repealed 1973). The evidence establishes that Teton Canal's predecessors intended the Glendora Canal and the Glendora Reservoir to be included under the 1890 Notice. As we concluded above, Teton Canal's predecessors developed the diversion point described in the 1890 Notice by constructing the Glendora Canal. Teton Canal's predecessors stated in the 1890 Notice that they had diverted water by means of a ditch that "carries or conducts 3000 inches of water from" the Teton River. Over a decade after Teton Canal's predecessors filed the 1890 Notice, another predecessor, Russell Shepherd, asserted in his answer to the *Perry* complaint that the ditch diverting water under the 1890 Notice conveyed "3,000

17

inches of the water" from the Teton River. The effect of this evidence is that Teton Canal's predecessors intended to, and eventually did, convey 3,000 inches of water in the Glendora Canal under the 1890 Notice.

¶37 The 1890 Notice further indicates that the "special purpose for which [the appropriated] water *is intended* to be used . . . is for gathering said waters in *a reservoir* and using it to irrigate adjacent lands . . . ." (Emphases added.) The 1892 plat map depicts the Glendora Canal running to the Glendora Reservoir; accordingly, the evidence demonstrates that the *reservoir* to which the 1890 Notice referred is the Glendora Reservoir. Other evidence in the record supports the conclusion that the Glendora Reservoir is the reservoir Teton Canal's predecessors intended to develop under the 1890 Notice. The history of Teton Canal written by a past President states that the Glendora Canal "was completed to the small lake" that eventually would be known as the Glendora Reservoir. The GLO representative who examined the Glendora Reservoir site in 1909 confirmed that the Glendora Canal ran to the reservoir that was contained by a dam 450 feet long and five feet high. The effect of this evidence is that Teton Canal's predecessors intended to, and eventually did, develop and maintain off-stream water storage in the Glendora Reservoir under the 1890 Notice.

¶38 While the 1892 plat map depicts the Eureka Canal running to the not-yet-developed Eureka Reservoir, the evidence establishes clearly that Teton Canal's predecessors intended this portion of its irrigation system to be included under the 1891 Notice. The engineer for Teton Canal's predecessor affirmed on the 1892 plat map that

18

the Eureka Canal was "constructed under his supervision . . . ." He identified the Eureka Canal's diversion point as "beginning at a point on the north bank of the Teton River in the Northeast quarter (N.E. ¼) of Section 35, T[ownship] 25 N[orth], R[ange] 6 W[est] . . . from which the Northeast corner of Sec[tion] 36, T[ownship] 25 N[orth], R[ange] 6 W[est] bears N[orth] 85º 58' E[ast] 6641 feet distant." In the 1891 Notice, Teton Canal's predecessors described the point of diversion as beginning "upon [the Teton River's] north bank about 1015 feet south 34º west from the [northwest] corner of Section (36) Thirty[-]six T[ownship] 25 North, R[ange] 6 West . . . ." The diversion point described in the 1891 Notice corresponds to the Eureka Canal's diversion point described on the 1892 plat map and is approximately two miles upstream from the Glendora Canal's diversion point.

¶39     Under the 1885 act, the 1891 Notice serves as prima facie evidence that the information contained in it is true. Section 89-814, RCM (1947) (repealed 1973). Teton Canal's predecessors claimed water under the 1891 Notice "for irrigating, *reservoirs* and other purposes." (Emphasis added.) The 1891 Notice specifies that the diversion ditch "carries or conducts Ten Thousand inches of water" from the Teton River. In his answer to the *Perry* complaint, Shepherd asserted that the ditch diverting water under the 1891 Notice conveyed the "amount of ten thousand inches" of water from the Teton River. Additionally, the GLO representative who examined the Eureka Reservoir site in 1909 reported that a large "feeder ditch" ran from the Teton River to the undeveloped reservoir

site. The effect of this evidence is that Teton Canal's predecessors intended to, and eventually did, convey water in the Eureka Canal under the 1891 Notice.

¶40 Although the 1892 plat map reveals the intent of Teton Canal's predecessors to develop and maintain off-stream water storage in the Eureka Reservoir by way of the Eureka Canal, this intent is expressed in the 1891 Notice, which undisputedly did not survive the *Perry* decree. The Water Court misapprehended the effect of the nullified 1891 Notice. When taken together with the two-mile distance between the points of diversion, and the fact that the 1890 Notice's diversion point was undisputedly put to use in the Glendora Canal, the court's finding that the Eureka Reservoir has a priority date based on the 1890 Notice is clearly erroneous.

¶41 Teton Canal's actions in the 1920s and 1930s further establish Teton Canal's understanding that the Eureka Reservoir was not included under the 1890 Notice. Teton Canal's stockholders approved "putting $400 per share" toward developing the Eureka Reservoir at a September 2, 1936 special stockholders' meeting. The discussion of "securing water rights" at this same meeting demonstrates Teton Canal's recognition that developing the Eureka Reservoir required a new appropriation. Moreover, Teton Canal's filing of the 1921 Notice and the Water Conservation Board's filing of the 1936 Declaration further demonstrate that Teton Canal understood that new water right claims were needed for the Eureka Reservoir's development. The proposed reservoir's legal descriptions in both the 1921 Notice and the 1936 Declaration generally correspond to the Eureka Reservoir's current location and its location as shown on the 1892 plat map.

20

The diversion point described in the 1921 Notice corresponds with both the Eureka Canal's diversion point described on the 1892 plat map and the diversion point described in the 1891 Notice. The affidavit signed by Teton Canal's President in 1982 demonstrates that the diversion point described in the 1936 Declaration was meant to correspond to the Eureka Canal's diversion point as described on the 1892 plat map, the 1891 Notice, and the 1921 Notice.

¶42 The *Perry* decree extinguished all rights claimed by Teton Canal except those preserved under the 1890 Notice. The 1921 Notice and the 1936 Declaration therefore confirm Teton Canal's understanding that it lost its claim under the 1891 Notice to the Eureka Reservoir through the *Perry* decree and that the Eureka Reservoir was not part of the 1890 Notice.

¶43 A thorough review of the record convinces us that the Water Court misapprehended the effect of the evidence in finding that a sizable reservoir at the Eureka site was part of the 1890 Notice's intent. Although Teton Canal's predecessors contemplated and eventually developed an extensive system of canals and reservoirs—as detailed by the 1892 plat map—the evidence establishes that the Eureka Reservoir was intended to be developed under the 1891 Notice and not the 1890 Notice. Accordingly, the Water Court's conclusion that the Eureka Reservoir is properly administered as part of Teton Canal's water right claims under the 1890 Notice is incorrect.

21

## Reasonable Diligence and the Eureka Reservoir's Priority Date

¶44    Teton Canal contends that "even if the [1890 Notice] was initially developed at the Glendora Canal diversion point . . . , nothing under the law prevented [Teton Canal's] predecessors from moving the diversion point and diverting water under the [1890 Notice] from either the Glendora or the Eureka Canal diversions, or both."  In other words, Teton Canal asserts that off-stream storage in the Eureka Reservoir is included under the 1890 Notice because Teton Canal simply moved the 1890 Notice's diversion point two miles upstream following the *Perry* decree.  Teton Canal ignores Teton Reservoir's contention that the 1891 Notice, which the *Perry* decree extinguished, sets forth Teton Canal's original claim for the Eureka Reservoir.  Moreover, independent of our conclusion that the 1890 Notice does not include the Eureka Reservoir, the evidence establishes that Teton Canal and its predecessors failed to proceed with reasonable diligence in developing the Eureka Reservoir site.  Therefore, regardless of Teton Canal's contention that it moved the 1890 Notice's diversion point, the Eureka Reservoir's completion in 1937 could not relate back to the 1890 Notice's filing.

¶45    Under the 1885 statutory appropriation act, Teton Canal's 1890 Notice could not "ripen into a valid appropriation until the . . . statutory requirements for a completed appropriation [were] met." *Intake*, 171 Mont. at 431, 558 P.2d at 1118.  Accordingly, the priority date for the Eureka Reservoir could not relate back unless Teton Canal showed that it "proceed[ed] to prosecute the excavation or construction of the work by which the water appropriated [was] to be diverted, and . . . prosecute[d] the same with reasonable

22

diligence to completion." Section 89-811, RCM (1947) (repealed 1973). In *Intake*, we held that under § 89-811, RCM, an appropriator is not required to commence "actual on-site excavation or construction of the diversion works" to preserve its priority date, but the appropriator must demonstrate that it made a "steady on-going effort in good faith . . . to prosecute the construction of the project under the circumstances . . . ." *Intake*, 171 Mont. at 436, 558 P.2d at 1121. We based this holding on the following passage from a leading water law treatise:

> What constitutes due diligence is a question of fact to be determined by the court in each case. Diligence does not require unusual or extraordinary effort, but it does require a steady application of effort – that effort that is usual, ordinary and reasonable under the circumstances. * * * So long as the applicant prosecutes the construction of works in good faith with a steady effort, he should be held to have prosecuted with diligence.

*Intake*, 171 Mont. at 434, 558 P.2d at 1120 (quoting 6 *Waters and Water Rights* § 514.1, 308-309 (Robert Emmet Clark ed., 1972)).

¶46 The Water Court cited this same passage from *Intake* in concluding that Teton Canal proceeded with reasonable diligence in developing the Eureka Reservoir site. The court found that Teton Canal's predecessors "aggressively pursued" developing reservoirs under the 1890 Notice. The court further found that "while [Teton Canal] controlled the Eureka site and ran its canal through a natural lake bed at this location, it is not clear if [Teton Canal] could actually store water at the Eureka site prior to 1936." The court noted that Teton Canal's record of director and shareholder meeting minutes begins in 1920; therefore, "there is a significant period of time with no evidence regarding [Teton Canal's] progress towards developing Eureka Reservoir." In

23

concluding that Teton Canal proceeded with reasonable diligence in developing the Eureka Reservoir, the court relied on the following evidence: the 1892 plat map; the GLO representatives' reports; Teton Canal's director and stockholders' meeting minutes from the 1920s and 1930s; and historical reservoir development in the area by Teton Reservoir and Farmers Canal.

¶47    Based on our review of the record, we conclude that Teton Canal failed to proceed with reasonable diligence in developing the Eureka Reservoir site until the mid-1930s. The evidence shows that after filing the 1890 Notice, Teton Canal's predecessors completed constructing the Eureka Canal in 1892. Teton Canal's predecessors also filed an application and plat map with the GLO in 1892. In 1909, a GLO special agent examined the Eureka Reservoir site and reported in a February 1910 letter that the site was "a natural lake bed . . . ." The agent further noted that the site "could also be used as a reservoir . . . ." Although the agent recommended "final approval of this reservoir site," the letter demonstrates that Teton Canal had not yet developed the reservoir.

¶48    Over ten years later, in September 1921, Teton Canal held a special stockholders' meeting at which "the possibilities of building a reservoir" were discussed. The stockholders approved getting an engineer "to find out the [reservoir's] actual costs and water storage" during the same meeting. Teton Canal subsequently filed the 1921 Notice and attempted to secure a private loan to finance the Eureka Reservoir's development. These efforts were unsuccessful, so Teton Canal's Board of Directors approached the stockholders about creating an irrigation district to finance the reservoir's construction.

24

At a July 29, 1922 special stockholders' meeting, Teton Canal's stockholders rejected the proposal to create an irrigation district to finance the Eureka Reservoir's development. The stockholders ultimately voted to form a committee in November 1922 "to do the best they can without any expense to the company" to explore options for developing the reservoir. The committee was to report at the annual stockholders' meeting; however, the minutes from the January 13, 1923 annual stockholders' meeting do not mention any report by a committee on the reservoir. There is no record of any actions taken by the committee and the next mention of the reservoir site came in December 1926—after questions were raised regarding Teton Canal's rights in the reservoir site.

¶49    In November 1926, a GLO division inspector investigated the site and reported that "no reservoir has been built where it was intended to construct the Eureka reservoir . . . ." The inspector noted that the Secretary of Teton Canal did "not possess the fund of information about this project, one might expect from an active officer, he expressed the opinion that [Teton Canal] was interested in the Eureka site and probably would use it later." The inspector further reported that Teton Canal "employs no engineer, and to obtain from [Teton Canal's Secretary] any definite dependable information was rather difficult, for the reason that he does not possess it." The inspector went on to state, "I am frank to say that an authoritative dependable record, showing complete title to this grant, can be had only in an abstract, and I think [Teton Canal] should be required to furnish one." The inspector recommended that Teton Canal should "state what their intentions are as to the Eureka site," and suggested that the GLO "call

25

on [Teton Canal] to file proof of ownership, and proof of construction" of the Eureka Reservoir. In response to the GLO's report, questions were raised at the January 1927 annual stockholders' meeting about "what was being done to protect the Company's title to the [Eureka Reservoir] site near the river in Sec[tion] 31 – T[ownship] 25." The minutes reflect that "[t]he general opinion was that . . . [Teton Canal's] title to the reservoir site was good and was not subject to cancellation."

¶50 Nearly seven years later, at a January 1934 annual stockholders' meeting, Teton Canal's stockholders again discussed developing a reservoir. At this meeting, the stockholders approved forming a committee to see what could be done "about putting [a] reservoir in any appropriate location." At a September 2, 1936 special stockholders' meeting, Teton Canal's stockholders finally approved "putting $400 per share" toward developing a reservoir. The stockholders approved appointing a committee and holding another special meeting for the "purpose of investigating building of Reservoir or securing water rights" at the same meeting. At the September 19, 1936 special stockholders' meeting, the stockholders voted to "apply to [the Water Conservation Board] for [a] loan of $25,000 for building Reservoir and securing land for same and other expenses in connection of same." At this same meeting, the stockholders voted to turn over the reservoir site to the Water Conservation Board. That Board subsequently filed the 1936 Declaration. It ultimately took the Water Conservation Board's involvement in the project to finally complete the Eureka Reservoir in 1937—over forty-five years after Teton Canal's predecessors filed the 1890 Notice.

26

¶51 While reasonable diligence does not require that Teton Canal undertook "unusual or extraordinary effort" in completing the Eureka Reservoir, it does require that Teton Canal made a "steady on-going effort in good faith . . . to prosecute the construction" of the reservoir. *Intake*, 171 Mont. at 434, 436, 558 P.2d at 1120-1121. The record establishes that, although Teton Canal and its predecessors maintained title to the site, they did not undertake a steady, on-going effort in good faith to develop the Eureka Reservoir until the mid-1930s.

¶52 The available evidence shows that after taking the initial steps of filing the 1890 and 1891 Notices, developing the Eureka Canal, and filing the application and 1892 plat map with the GLO, Teton Canal did not discuss building a reservoir at the site until 1921. The 1926 GLO inspector's report makes clear that site development had not occurred in the thirty-plus years since Teton Canal's predecessors took the initial steps. Although Teton Canal filed the 1921 Notice for the Eureka Reservoir site, Teton Canal's stockholders ultimately rejected a proposal to fund the site's development. Moreover, Teton Canal's stockholders were unwilling to commit "any expense to the company" to even explore building a reservoir in 1922.

¶53 The 1926 GLO inspector's report indicates that one of the few efforts that Teton Canal's predecessors made to develop the site—filing the application and plat map with the GLO—was being called into question due to Teton Canal's lack of progress. The report also demonstrates that Teton Canal's own Secretary did not possess any "definite dependable information" regarding the Eureka Reservoir's development. The Secretary

27

lacked this information only a few years after Teton Canal's shareholders discussed the site's development, filed the 1921 Notice for the reservoir, rejected a proposal to fund the reservoir's construction, and formed a committee to explore options for developing the site. The Secretary did convey to the GLO representative that Teton Canal was "interested" in the site; he also indicated that Teton Canal would "probably use it later."

¶54 Based not only on the dearth of evidence between the 1892 plat map and the 1921 minutes of the Teton Canal stockholders' meetings, but also on the shareholders' recorded actions and inactions, we conclude that the Water Court misapprehended the effect of the evidence when it found that Teton Canal "aggressively pursued" the development of the Eureka Reservoir. Although there were sporadic and isolated actions in the decades following the 1890 and 1891 Notices, the shareholders expressly rejected a plan in 1922 that would have moved the project forward. Four years later, an active officer of Teton Canal did not know about plans for the reservoir's development and merely expressed a possible interest in the site. The evidence therefore establishes that Teton Canal failed to prosecute the Eureka Reservoir's development with reasonable diligence following its first Notices of Appropriation.

¶55 Since Teton Canal's claim cannot be staked to the 1890 Notice or to the nullified 1891 Notice, the inquiry turns to what priority date should be assigned to the Eureka Reservoir. Teton Reservoir asserts that the Eureka Reservoir should be decreed a December 3, 1936 priority date under the 1936 Declaration. It bases its argument on three grounds: the Eureka Reservoir was not intended as part of the 1890 Notice; the

28

Eureka Reservoir was not developed with due diligence; and even if the reservoir had been contemplated as part of the 1890 Notice and pursued with reasonable diligence, the current reservoir is much larger than the reservoir reflected on the 1892 plat map.

¶56 Teton Canal has not made an alternative argument that any date other than the April 18, 1890 priority date should apply. The evidence establishes that the 1890 Notice did not contemplate the Eureka Reservoir and that Teton Canal failed to prosecute the Eureka Reservoir's development with reasonable diligence until the mid-1930s. Accordingly, the Water Court must determine Teton Canal's priority date for the Eureka Reservoir in accordance with this evidence.

## CONCLUSION

¶57 The Water Court's Order regarding Teton Canal's water right claims to the Eureka Reservoir is reversed. We remand to the Water Court to assign a new priority date to Teton Canal's rights to the Eureka Reservoir and for further proceedings consistent with this Opinion.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT
/S/ JIM RICE

29