JUSTICE BAKER
delivered the Opinion of the Court.
¶1 The Montana Public Employees Association, on behalf of Matthew Tubaugh, appeals the decision of the Sixth Judicial District Court to vacate an arbitrator’s award in his favor. We address the following issues on appeal:

1. Whether the Arbitrator exceeded, her powers by requiring progressive discipline pursuant to the Collective Bargaining Agreement.

2. Whether the Arbitrator violated public policy by requiring the City of Livingston to reinstate Tubaugh to his previous position or one of comparable pay.

3. Whether the District Court erred when it vacated the Award on the grounds that the Award prevented the City of Livingston from requiring Fitness for Duty Examinations.

4. Whether the Arbitrator exceeded her powers by ordering the City of Livingston to expunge the Fitness for Duty Examination from Officer Tubaugh’s personnel file.

*186 ¶2 We reverse the District Court and remand with instructions to confirm the arbitration award.
PROCEDURAL AND FACTUAL BACKGROUND[1]
¶3 The City of Livingston hired Matthew Tubaugh as a police officer in 2004. Tubaugh initially met or exceeded expectations as an officer. Prior to 2011, Tubaugh had received only a few minor reprimands. A series of incidents that occurred in 2011 and 2012, however, led to his being discharged from the police force. The first incident occurred when Tubaugh testified in a criminal case on December 12 and 15, 2011. During a City Court trial, he told the judge that he disagreed with a ruling of the court and later became aggressive and argumentative toward the defendant. Next, on January 6,2012, Tubaugh disagreed with his supervising officer and attempted to confront the County Attorney. When he was told that the County Attorney was not available, he made a profane outburst. Later, on April 15, 2012, Tubaugh and another officer made an arrest. At the detention center, he lost his composure, called the arrestee a “small child” and a “baby,” and slammed down his clipboard. He then injected himself into the booking process and charged the arrestee with obstruction of justice after the arrestee was reluctant to provide an address.
¶4 On June 8,2012, Tubaugh criticized a co-worker, Jessica Kynett, for using the internet at work and for missing work for physical therapy. Tubaugh was not Kynett’s supervisor. The interaction became confrontational and Tubaugh ignored an order from Sergeant Dale Johnson to “knock it off.” On June 23, 2012, Tubaugh and another officer made another arrest, this time for disorderly conduct. At the detention center, Tubaugh’s conduct escalated the situation and ultimately provoked a physical altercation. Detention staff helped Tubaugh subdue the arrestee. In addition to the initial charges, Tubaugh charged the arrestee with assault for the altercation.
¶5 On June 28, 2012, Police Chief Darren Raney issued a letter of reprimand to Tubaugh, primarily for the confrontation with Kynett, but the letter also referenced other incidents of inappropriate conduct. A letter of complaint was filed concerning Tubaugh’s behavior during one of the arrests.
¶6 On July 25, 2012, Tubaugh was placed on paid administrative leave. Subsequent investigations, conducted by Raney, found that *187 Tubaugh had engaged in unprofessional conduct and that his use of force against one of the prisoners was not objectively reasonable. Raney also became concerned that Tubaugh had displayed an increasing tendency to respond to disrespectful or insufficiently deferential behavior with charges such as disorderly conduct, resisting arrest, obstruction, or assaulting an officer.
¶7 Raney determined that a fitness for duty examination was appropriate. Raney ordered Tubaugh to complete an examination with George Watson, a psychologist with a focus on law enforcement fitness for duty. Watson concluded that Tubaugh suffered from a personality disorder, and that he exhibited symptoms of paranoia, narcissism, and histrionic personality disorder. Watson concluded that he was unable to recommend that Tubaugh continue as an officer. After reviewing Watson’s report and providing Tubaugh the opportunity to respond, Raney recommended Tubaugh’s discharge. The recommendation was accepted and Tubaugh was discharged on October 29,2012.
¶8 Tubaugh protested his discharge pursuant to his rights under the collective bargaining agreement (CBA) in effect at the time between the City of Livingston and the Montana Public Employees Association (MPEA). Pursuant to the CBA’s binding arbitration provision, an arbitration hearing was held. On May 20, 2013, Arbitrator Anne MacIntyre determined that while there was just cause to discipline Tubaugh, the proper disciplinary action was a three-month suspension without pay. She ordered that the City of Livingston reinstate Tubaugh to his previous position or to one of comparable pay, and pay Tubaugh back pay and benefits until his reinstatement. She also ordered that the City of Livingston expunge the fitness for duty examination from Tubaugh’s personnel file.
¶9 The City of Livingston timely petitioned to vacate the Arbitrator’s award. Following briefing and oral argument on the petition, the District Court issued an order on January 15, 2014, vacating the Arbitrator's award. The MPEA now appeals that ruling.
STANDARDS OF REVIEW
¶10 The parties cite our precedent that “[t]he standard of review for a court’s refusal to modify or vacate an arbitration award is whether the court abused its discretion.” Terra W. Townhomes, L.L.C. v. Stu Henkel Realty, 2000 MT 43, ¶ 22,298 Mont. 344, 996 P.2d 866; Paulson v. Flathead Conservation Dist., 2004 MT 136, ¶ 18, 321 Mont. 364, 91 P.3d 569. But our prior cases also have emphasized that “the scope of judicial review of an arbitration award is strictly limited to the *188 statutory provisions governing arbitration.” Duchscher v. Vaile, 269 Mont. 1, 4, 887 P.2d 181, 183 (1994); see Paulson, ¶ 24; Terra W., ¶ 22. After a matter has been submitted to binding arbitration, district courts "are not permitted to review the merits of the controversy, but may only confirm, vacate, modify, or correct an arbitration award pursuant to §§ 27-5-311, -312, and -313, MCA.” Teamsters Union Local No. 2, Int'l Bhd. of Teamsters v. C.N.H. Acquisitions, Inc., 2009 MT 92, ¶ 14, 350 Mont. 18, 204 P.3d 733.
¶11 The U.S. Supreme Court has held that "courts of appeals should apply ordinary, not special, standards” when reviewing district court decisions on arbitration awards; a decision on an arbitration award should be reviewed like "any other district court decision... accepting findings of fact that are not ‘clearly erroneous’ but deciding questions of law de novo.” First Options, Inc. v. Kaplan, 514 U.S. 938, 947-48, 115 S. Ct. 1920, 1926 (1995). This is consistent with our ordinary standards of review governing a District Court’s interpretation of a statute, and its application of controlling legal principles to findings of fact. City of Missoula v. Iosefo, 2014 MT 209, ¶ 8, 376 Mont. 161, 330 P.3d 1180; BNSF Ry. Co. v. Cringle, 2012 MT 143, ¶ 16, 365 Mont. 304, 281 P.3d 203. In such cases, we review legal conclusions de novo. Cringle, ¶ 16. Further, our review is plenary to the extent that a discretionary ruling is based on a conclusion of law. Jacobsen v. Allstate Ins. Co., 2009 MT 248, ¶ 17, 351 Mont. 464, 215 P.3d 649. Because the District Court’s decision in this case turns on whether it correctly applied the statutory provisions governing review of arbitration awards, we apply de novo review to the District Court’s ruling.
DISCUSSION
¶12 The District Court held that the Arbitrator exceeded her powers by requiring progressive discipline and that the Arbitrator’s decision to reinstate Tubaugh violated public policy* The court alternatively held that the arbitration award may be vacated "under Section 27-5-312(lXb), MCA, for a manifest disregard of the law.” There have been no allegations that would trigger that subsection of the statute, which requires "evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any pairty[.]” Section 27-5-312(l)(b), MCA; see Geissler v. Sanem, 285 Mont. 411, 417-18, 949 P.2d 234, 239 (1997). Accordingly, we proceed to examine the claims under § 27-5-312(lXc), MCA, whether the Arbitrator exceeded her powers, and to determine whether the decision violates public policy.
*189 ¶13 1. Whether the Arbitrator exceeded her powers by requiring progressive discipline pursuant to the Collective Bargaining Agreement.
¶14 “Generally, Montana gives arbitrators broad authority and powers to determine all issues.” Paulson, ¶ 22. “It is well-settled that a court’s power to vacate an arbitration award must be extremely limited because an overly expansive judicial review of arbitration awards would undermine the litigation efficiencies which arbitration seeks to achieve.” Fine v. Bear, Stearns & Co., 765 F. Supp. 824, 827 (S.D.N.Y. 1991).
¶15 Upon the application of a party, the District Court “shall vacate [an arbitrator’s] award if... the arbitrator!] exceeded [her] powers.” Section 27-5-312(l)(c), MCA. We have held that an arbitrator exceeds her powers if she decides matters that were not submitted to her. Terra W., ¶ 27; see also Batten v. Howell, 389 S.E.2d 170, 172 (S.C. Ct. App. 1990) (“The question of whether arbitrators have exceeded their powers relates to arbitrability of the issue they have attempted to resolve.”). As long as an arbitrator’s factual determination and legal conclusions derive their essence from the collective bargaining agreement itself and the award represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced. Sheet Metal Workers Int’l Ass’n, Local No. 359 v. Arizona Mechanical & Stainless, Inc., 863 F.2d 647, 653 (9th Cir. 1988). “This remains so even if the basis for the arbitrator’s decision is ambiguous and notwithstanding the erroneousness of any factual findings or legal conclusions.” Sheet Metal Workers, 863 F.2d at 653.
¶16 On the other hand, “[a]n arbitrator’s authority is limited by the bounds of the [arbitration] agreement, and courts may vacate [arbitration] awards that extend beyond the contractual scope of arbitration.” Nelson v. Livingston Rebuild Ctr., Inc., 1999 MT 116, ¶ 15, 294 Mont. 408, 981 P.2d 1185 (citation omitted). “When a collective bargaining agreement prohibits the addition of contract terms, the arbitrator may not proceed to do so.” IBEW, Local 175 v. Thomas & Betts Corp. 182 F.3d 469, 472 (6th Cir. 1999). However, “[i]f the remedy fashioned by the arbitrator has been rationally derived from the [arbitration] agreement it will be upheld on review.” Nelson, ¶ 19.
¶17 The parties presented the following issue to arbitration:
Did the City of Livingston Police Department have cause under the terms of the collective bargaining agreement with the Montana Public Employees Association Livingston Police Unit for the discharge of Matthew Tubaugh, and if not, what is the *190 appropriate remedy?
¶18 The Arbitrator determined that the City of Livingston’s approach to dealing with Tubaugh’s misconduct violated the CBA because the City failed to attempt to reform Tubaugh’s behavior before requiring a fitness for duty examination and terminating him. The CBA states, “If discipline is warranted, it will be rendered in one of the following forms.” The CBA then lists and explains the available “forms” of disciplinary action: verbal counseling, written reprimands, suspension, demotion, and termination. Although the express terms of the CBA do not provide for progressive discipline, the Arbitrator found that the CBA “is intended to be corrective and progressive” based on a widely-used definition of “good cause.” She noted that the July 1,2012 CBA, adopted prior to Tubaugh’s discharge, added a good cause standard to the requirement for discipline. The Arbitrator then used her interpretation of the “good cause” provision in the CBA to conclude that there was cause to discipline Tuhaugh, but that the appropriate remedy was a three-month suspension, not termination.
¶19 The CBA does not specify that discipline will be rendered in any particular order. Rather, the CBA allows for any of the various disciplinary actions to be taken where determined by the City to be appropriate. Further, the Grievance Procedure set forth in the CBA expressly states that “[t]he Arbitrator shall have no authority to alter, amend or delete any Policy of the City, or provisions of this Agreement.” The District Court determined that “[t]here is simply no provision in the CBA that requires moving through a series of disciplinary steps prior to a termination.” The court observed that “the manner of discipline [instead] is elected from a range of possibilities .... This is not progressive discipline.” The court then concluded that the Arbitrator exceeded her authority by imposing a progressive discipline requirement that altered the terms of the CBA that were negotiated by the parties.
¶20 An arbitrator exceeds her authority if she attempts to resolve an issue that is not arbitrable because it is outside the scope of the arbitration agreement, but she does not exceed her powers by making factual or legal errors. Sheet Metal Workers, 863 F.2d at 653. As long as the arbitrator is “even arguably construing or applying the contract and acting within the scope of [her] authority, that a court is convinced [she] committed serious error does not suffice to overturn [her] decision.” UnitedPaperworkers Int’l Union v. Misco, Inc., 484 U.S. 29, 38, 108 S. Ct. 364, 371 (1987).
¶21 Here, the Arbitrator’sreasoninginvolvedherinterpretationofthe CBA’s provisions for discipline and termination, matters properly *191 within the scope of the issue presented by the parties for arbitration: whether there was cause for termination. Even if the Arbitrator’s reasoning involved errors of fact and law, her award is limited to that issue. The District Court found error in the Arbitrator’s interpretation of the CBA. A court may not overturn an arbitrator’s decision, however, “simply because the court believes its own interpretation of the contract would be the better one.” W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, 461 U.S. 757, 764, 103 S. Ct. 2177, 2182 (1983).
¶22 The District Court incorrectly determined that the Arbitrator exceeded her authority in her interpretation of the CBA. Although the District Court’s interpretation was plausible, we cannot conclude that the Arbitrator’s contrary award “does not draw its essence from the [CBA].” W.R. Grace & Co., 461 U.S. at 766, 103 S. Ct. at 2183.
¶23 2. Whether the Arbitrator violated public policy by requiring the City of Livingston to reinstate Tubaugh to his previous position or to one of comparable pay.
¶24 “As with any contract, ... a court may not enforce a collective-bargaining agreement that is contrary to public policy.” W.R. Grace, 461 U.S. at 766, 103 S. Ct. at 2183. A court’s refusal to enforce an arbitrator’s interpretation of a contract on this ground is limited to situations where the contract as interpreted would violate “some explicit public policy” that is “well-defined and dominant.” Misco, 484 U.S. at 43, 108 S. Ct. at 373. Such a public policy is to be ascertained “by reference to the laws and legal precedents and not from general considerations of supposed public interests.” Misco, 484U.S. at 43, 108 S. Ct. at 373. We consider whether the arbitrator’s award creates an “explicit conflict” with other laws and legal precedents. It is the arbitrator’s interpretation of the contract that must be determined to violate a public policy. See Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173, etc., 886 F.2d 1200, 1209-12 (9th Cir. 1989).
¶25 Without referring to any specific laws or legal precedents, the District Court determined that the Arbitrator’s decision violated the “well-defined public policy” of “the safety of fellow-officers and the safety of the general public.” The court reasoned that the reports of Tubaugh’s conduct were “very troubling,” and that the “record reflects [the] factual determination that Tubaugh was not fit for duty.” The City supports the court’s ruling by noting that police officers hold positions of public trust, citing to several statutes, not controlling here, involving the general duties of police officers and mistreatment of *192 prisoners.
¶26 The U.S. Supreme Court has been careful to avoid creating a “broad judicial power to set aside arbitration awards as against public policy.” Misco, 484 U.S. at 43, 108 S. Ct. at 373. “[A] formulation of public policy based only on ‘general considerations of supposed public interests’ is not the sort that permits a court to set aside an arbitration award that was entered in accordance with a valid collective-bargaining agreement.” Misco, 484 U.S. at 44, 108 S. Ct. at 374. “If a court relies on public policy to vacate an arbitral award reinstating an employee, it must be a policy that bars reinstatement.” Stead Motors, 886 F.2d at 1212 (emphasis in original). “Courts cannot determine merely that there is a ‘public policy’ against a particular sort of behavior in society generally and, irrespective of the findings of the arbitrator, conclude that reinstatement of an individual who engaged in that sort of conduct in the past would violate that policy.” Stead Motors, 886 F.2d at 1212; see also Westvaco Corp. v. United Paperworkers Int’l Union ex rel. Local Union 676, 171 F.3d 971, 976-78 (4th Cir. 1999) (rejecting the argument that an arbitrator’s reinstatement of an employee violated public policy by hindering a corporation’s ability to remedy sexual harassment in the workplace). ¶27 The Arbitrator decided, based on her finding that “the degree of discipline accorded was not reasonably related to the seriousness of Tubaugh’s offense and his past record,” that the City did not have cause under the terms of the CBA for Tubaugh’s discharge, and that the appropriate remedy was a three-month suspension. The District Court, noting the importance of officer and public safety, found support in the record for the City’s conclusion that Tubaugh’s unfitness “was based upon his episodes of inappropriate anger and aggressive behavior that the [fitness for duty evaluation] concluded was not going to change.” Because a police department has an undisputed duty to protect the public, the court concluded that the Arbitrator’s award violated public policy.
¶28 “Courts are strictly barred from engaging in fact-finding when they review labor arbitration awards.” Stead Motors, 886 F.2d at 1217. The District Court’s decision to vacate the award for violating public policy impermissibly substituted the Arbitrator’s factual determinations with its own and relied on only a generalized “ ‘public policy’ against a particular sort of behavior.” Stead Motors, 886 F.2d at 1212. The District Court erred in holding that the Arbitrator violated public policy by requiring the City of Livingston to reinstate Tubaugh to his previous position or to one of comparable pay.
*193 ¶29 3. Whether the District Court erred when it vacated the Award on the grounds that the Award prevented the City of Livingston from requiring fitness for duty examinations.
¶30 The Arbitrator expressed concern with the fitness for duty examination in this case, stating, “This use of the fitness for duty examination as a substitute for the corrective and progressive discipline contemplated by the collective bargaining agreement is troubling.” She noted that the examination was not mandated by the CBA, city poli<y, or state law. She further determined that, “[a]part from the procedural issues relating to this fitness for duty examination, the resulting report prepared by Watson is itself troubling.” She observed that Watson’s sole interview with Tubaugh took place in a public venue, that Watson relied on statements from people who were not identified in the report, and that Tubaugh never had the opportunity to rebut or challenge the bases for Watson’s conclusions. The Arbitrator did not hold that the City could not require its officers to complete a fitness for duty examination; instead, she held that the fitness for duty examination here was not credible or reliable because of the manner in which it was conducted.
¶31 The District Court disagreed with the Arbitrator’s assessment of the fitness for duty evaluation. After concluding that the CBA permitted the Cify of Livingston to order the examination, the court noted that Dr. Watson’s qualifications were not questioned during the Arbitration hearing, and that Raney gave Tubaugh an opportunity to provide additional information after the examination. The court held that “the Arbitrator’s Award effectively deleted the broad management rights reserved to Chief Raney under the very terms of the CBA, by determining that he did not have the right to require the [fitness for duty examination] of Tubaugh.”
¶32 “Judicial review of arbitration is profoundly more limited than judicial review of a verdict of a jury or trial court.” 21 Samuel Williston, Richard A. Lord, Williston on Contracts § 57:129,629-30 (4th ed. 2001). Arbitrators have the power to review issues of both fact and law. Paulson, ¶ 23. The District Court may not re-weigh the evidence in the case or reinterpret the reliability of evidence presented for the Arbitrator’s consideration. See Stockade Enters, v. Ahl, 273 Mont. 520, 524, 905 P.2d 156, 158 (1995). The Arbitrator’s award did not alter existing management rights, including any right to require fitness for duty examinations of officers. Instead, the Arbitrator determined that the fitness for duty examination was the improper approach in this circumstance and that the examination itself was not credible.
*194 ¶33 Judicial review of the Arbitrator’s award is limited to the determination whether there is any statutory ground for vacatur and whether the arbitrator acted within the scope of her authority. Williston, at § 57:129, 630. The Arbitrator’s authority to weigh evidence clearly allowed her to determine the credibility of the fitness for duty examination. The District Court should not have reached the issue whether the City of Livingston may require police officers to submit to fitness for duty examinations, and we make no ruling on that point here. The District Court erred by determining that the Arbitrator’s Award should be vacated because of its findings related to the fitness for duty examination.
¶34 4. Whether the Arbitrator exceeded her powers by ordering the City of Livingston to expunge the fitness for duty examination from Officer Tubaugh’s personnel file.
¶35 The District Court held that the Arbitrator exceeded her authority in ordering the City of Livingston to expunge Tubaugh’s fitness for duty examination from his personnel file. The District Court determined that the examination should remain in the file because it was admitted as evidence in the arbitration proceedings, and it “was already addressed in newspaper reporting of the hearing.” The City of Livingston supports the District Court’s decision with references to the Right to Know provision of the Montana Constitution (Art. II, section 9) and to “public record laws,” without specific citations.
¶36 Here, however, the issue is not whether the public has a right to know, but whether the Arbitrator had the authority to remove the examination from Tubaugh’s personnel file after she determined that the examination was not credible. Because of the voluntary, informal nature of arbitration, “[t]he reviewing court must observe the principle that arbitrators are free to fashion forms of relief which could not be ordered by a court in law or equity.” JBC of Wyoming Corp. v. Cheyenne, 843 P.2d 1190, 1194 (Wyo. 1992); § 27-5-312(2), MCA. Absent a clause specifically limiting the authority to grant a particular type of relief, it is implied by submitting to arbitration that the arbitrator has the power to order an appropriate remedy. Williston, at § 57:111, 575-76. “[W]ith regard to a proper remedy, the arbitrator should be given latitude and flexibility.” Danville Educ. Ass’n. v. Danville Area School Dist., 467 A.2d 644, 646 (Pa. Commw. Ct. 1983) (citing United Steel Workers v. Enter. Wheel and Car Corp., 363 U.S. 593 (1960)).
¶37 The Arbitrator did not order that the examination be destroyed. She merely ordered it removed from Tubaugh’s personnel *195 file to prevent it from being used for disciplinary purposes in the future. Similar to her determination regarding the examination’s credibility, this decision was within the scope of the issues the parties agreed to submit to arbitration — Tubaugh’s grievance over the City’s decision to discipline him and whether termination was the appropriate remedy. Removal from the personnel file of an examination report that the Arbitrator determined should not have been the basis for discharge was a form of relief within the Arbitrator’s broad powers under the CBA. The District Court erred when it held that the Arbitrator exceeded her authority by directing removal of the examination from Tubaugh’s personnel file.
CONCLUSION
¶38 We reverse the decision of the District Court and remand with instructions for the court to enter judgment confirming the arbitration award.
CHIEF JUSTICE McGRATH, JUSTICES WHEAT, COTTER, SHEA, McKINNON and RICE concur.

 The facts are taken from the findings of fact in the Arbitration Award. No record of the arbitration proceedings is before the Court on appeal.