FILED

March 1 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0392

DA 15-0392

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2016 MT 45

CHARLES E. FELLOWS, an individual,

      Plaintiff and Appellee,

MONTE GIESE, STEVE KELLY and
WILLIAM REICHELT,

      Plaintiffs-Intervenors and Appellees,

   v.

PATRICK SAYLOR, an individual; FARMERS
COOPERATIVE CANAL COMPANY, ELDORADO
COOPERATIVE CANAL COMPANY, TETON
COOPERATIVE CANAL COMPANY; TETON
COOPERATIVE RESERVOIR COMPANY; JOHN D.
PEEBLES, an individual, WILLIAM S. PEEBLES,
an individual; OTTIS BRYAN, an individual;
and SYLVIA BRYAN, an individual,

      Defendants and Appellants,

The Office of Water Commissioner for Perry
v. Beattie Decree Case No. 371; TETON
COOPERATIVE RESERVOIR COMPANY,

      Defendants.

APPEAL FROM:    Water Court of the State of Montana,
                  Cause No. WC 2015-01, Honorable Douglas Ritter, Presiding Judge

COUNSEL OF RECORD:

     For Appellants:

          Michael J.L. Cusick, Abigail R. Brown, Moore, O'Connell & Refling, PC,
          Bozeman, Montana

For Appellees:

Peter G. Scott, Gough, Shanahan, Johnson & Waterman, Bozeman, Montana (for Charles E. Fellows)

Stephen R. Brown, Garlington, Lohn & Robinson, PLLP Missoula, Montana (for Intervenors)

Submitted on Briefs: December 30, 2015

Decided: March 1, 2016

Filed:

_____
Clerk

2

Justice Beth Baker delivered the Opinion of the Court.

¶1    Appellants[1] appeal the order of the Water Court denying their motion to alter or amend its final order on certification that tabulated the water rights necessary to address Charles Fellows's underlying complaint in the Ninth Judicial District Court, Teton County.   This is the second time this matter has been before this Court on appeal. *Fellows v. Office of Water Comm'r*, 2012 MT 169, 365 Mont. 540, 285 P.3d 448 (hereafter *Fellows I*).   The *Perry* Defendants raise several issues on appeal that we restate as follows:

> 1.   *Whether the water right claims in controversy were properly determined following this Court's remand in* Fellows I.
>
> 2.   *Whether the District Court erred in granting Fellows's motion for substitution.*

¶2    We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3    Because the background facts are delineated in *Fellows I,* we restate the facts only briefly.

¶4    Montana's Constitution requires the Legislature to "provide for the administration, control, and regulation of water rights" and to "establish a system of centralized records" for those rights.   Mont. Const. art. IX, § 3(4).   In implementing this constitutional mandate, the Legislature created the Water Court, which has jurisdiction over "all matters

[1] Appellants are Patrick Saylor, Farmers Cooperative Canal Company, Eldorado Cooperative Canal Company, Teton Cooperative Canal Company, John D. Peebles, William S. Peebles, Ottis Bryan, and Sylvia Bryan.  Appellants refer to themselves collectively as the *Perry* Defendants and we will do the same.

3

relating to the determination of existing water rights within the boundaries of the state of Montana." Section 3-7-224(2), MCA. The law provides district courts with jurisdiction to enforce the provisions of water rights decrees and to supervise the distribution of adjudicated water. Tit. 3, Ch. 7, Pt. 2, MCA; Tit. 85, Ch. 2, MCA. The Water Court is in the process of adjudicating the water rights of all appropriators in Basin 41O, which includes the Teton River and Spring Creek—the sources of water at issue here. Although the Water Court has issued a temporary preliminary decree for Basin 41O, it has not yet issued a final decree. Therefore, the adjudication process in Basin 41O is still ongoing.

¶5 Fellows owns several water rights in Spring Creek near Choteau, Montana. His rights were decreed in *Sands Cattle & Land Co. v. Jackson*, Case 727 (Mont. 10th Judicial Dist. Ct., May 31, 1892). Fellows claims that Spring Creek is recharged by water seeping through a subsurface aquifer from a stretch of the Teton River known as the Springhill Reach. In other words, Fellows asserts that Spring Creek and the Teton River are hydrologically connected. Fellows therefore contends that maintaining the flow of Spring Creek is dependent upon maintaining water in the Springhill Reach.

¶6 The *Perry* Defendants own various water rights in the upper Teton River northwest of Choteau. Their rights were decreed in *Perry v. Beattie*, Case 371 (Mont. 11th Judicial Dist. Ct., March 28, 1908). The Ninth Judicial District Court, Teton County, now supervises the distribution of water pursuant to both *Perry* and *Sands*. The water rights decreed in *Perry* are administered by a water commissioner pursuant to § 85-5-101, MCA. In administering water rights under *Perry*, the Water Commissioner

4

has diverted water out of the Teton River into the Bateman Ditch above the Springhill Reach as a water management tool. *Fellows I,* ¶ 4; *Eldorado Co-Op Canal Co. v. Lower Teton Joint Objectors,* 2014 MT 272, ¶ 32, 376 Mont. 420, 337 P.3d 74 (hereafter *Eldorado*). Fellows alleges that water diversion through the Bateman Ditch diminishes the flow of water through the Springhill Reach and adversely affects the water available to satisfy his Spring Creek rights.

¶7 In February 2011, Fellows filed a complaint challenging the Water Commissioner's administration of water under the *Perry* decree. Specifically, he challenged the Water Commissioner's authority to divert water out of the Teton River by means of the Bateman Ditch. The District Court ultimately dismissed Fellows's complaint under M. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted, and Fellows appealed.

¶8 In *Fellows I,* we reversed the District Court's dismissal and remanded for further proceedings. *Fellows I,* ¶ 22. We agreed with the District Court that Fellows could not seek relief from the action of the *Perry* Water Commissioner under § 85-5-301, MCA, because he did "not derive his Spring Creek water right from the *Perry* decree . . . ." *Fellows I,* ¶ 16. We concluded, however, that Fellows could seek declaratory relief and that his allegations were sufficient to state a claim under M. R. Civ. P. 12(b)(6). *Fellows I,* ¶ 19. We concluded further that if Fellows could "prove hydrological connectivity between Spring Creek and the Teton River, then the next step should be certification to the chief water judge under § 85-2-406(2)(b), MCA." *Fellows I,* ¶ 21.

5

¶9 On remand, Fellows filed a motion for substitution of district court judge, which Judge Olson granted. After Judge Oldenburg assumed jurisdiction, Monte Giese, William Reichelt, and Steve Kelly (Intervenors) intervened.[2] Fellows then moved for summary judgment on the issue of hydrological connectivity. Following consideration of the parties' expert depositions, the District Court granted Fellows's motion, concluding that Spring Creek and the Teton River are hydrologically connected. The court found it unnecessary "at this stage of the proceeding" to address the scope, extent, or timing of the connectivity.

¶10 Fellows then requested the court to certify a question to the Water Court. The *Perry* Defendants objected to the request; the District Court held, however, that the "applicable and appropriate scope of the determination of the rights involved in the controversy is best left to the processes of the Water Court." Accordingly, the District Court certified the following issue for determination by the Water Court:

> Upon remand from the Montana Supreme Court in Cause No. 2012 MT 169, pursuant to this Court's determination of the hydrological connectivity between the Teton River and Spring Creek, and pursuant to MCA Section 85-2-406(2)(b), the Ninth Judicial District Court certifies this matter to the Montana Water Court for determination of the existing rights involved in this controversy, pursuant to Chapter 2 of Title 85, MCA. Upon its determination, the Water Court shall issue to the District Court a list or tabulation of rights, priorities, and approved points of diversion in a form determined appropriate by the Water Judge.

The Water Court issued its final order on certification on March 13, 2015.

---

[2] Intervenors claim water rights from the Teton River and were parties in related cases before this Court. *Eldorado*, ¶ 1; *Giese v. Blixrud*, 2012 MT 170, ¶ 1, 365 Mont. 548, 285 P.3d 458. Both *Eldorado* and *Giese* concerned the Water Commissioner's diversion of water from the Teton River into the Bateman Ditch. *Eldorado*, ¶ 7; *Giese*, ¶ 6.

6

¶11 In its final order, the Water Court concluded that the purpose of certification under § 85-2-406(2)(b), MCA, is "to provide sufficient information to enable the District Court to resolve the immediate controversy." Because it concluded that the underlying controversy stemmed from the Water Commissioner's use of the Bateman Ditch as a water management tool, the Water Court determined that the scope of the controversy should be defined by Fellows's water right claims and by the water right claims that historically utilized the Bateman Ditch. Consequently, the Water Court concluded that three Patrick Saylor Teton River water right claims, a Choteau Cattle Company Teton River water right claim, and Fellows's Spring Creek water right claims "constitute the claims properly before the Water Court in this certification." By the time of its certification order, all of the Saylor, Choteau Cattle Company, and Fellows water right claims had been adjudicated in the temporary preliminary decree. The court therefore concluded that further proceedings were not required in answering the certification issue. The Water Court tabulated the claims at issue and ordered that the matter be closed and returned to the District Court.

¶12 The *Perry* Defendants then filed a M. R. Civ. P. 59(e) motion to alter or amend the Water Court's judgment. The motion requested that the Water Court withdraw its final order and return the matter to the District Court "to properly identify the water rights involved in the controversy, as defined by the allegations of Fellows' First Amended Complaint." The Water Court denied the motion. The *Perry* Defendants appeal.

## STANDARDS OF REVIEW

¶13 We review a trial court's denial of a M. R. Civ. P. 59(e) motion for abuse of discretion. *In re Marriage of Anderson*, 2013 MT 238, ¶ 13, 371 Mont. 321, 307 P.3d 313. A trial court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice. *RN & DB, LLC v. Stewart*, 2015 MT 327, ¶ 14, 381 Mont. 429, 362 P.3d 61. We review a trial court's interpretation of a statute de novo. *City of Livingston v. Mont. Pub. Emps. Ass'n ex rel. Tubaugh*, 2014 MT 314, ¶ 11, 377 Mont. 184, 339 P.3d 41. Whether a court has jurisdiction over the parties or the subject matter is a legal conclusion that we review de novo. *Pinnow v. Mont. State Fund*, 2007 MT 332, ¶ 13, 340 Mont. 217, 172 P.3d 1273.

## DISCUSSION

¶14 *1. Whether the water right claims in controversy were properly determined following this Court's remand in* Fellows I.

¶15 In its order denying the *Perry* Defendants' motion to alter or amend its judgment, the Water Court first concluded that it had jurisdiction to determine the scope of the certification question because the Water Court's role under § 85-2-406(2)(b), MCA, "is to provide sufficient information to the District Court to facilitate resolution of the underlying water distribution controversy." The court next concluded that "Fellows has decreed rights from Spring Creek[;] he is not claiming the Teton River as the source for these water rights." The court reiterated that "Fellows is seeking the ability to participate in any District Court proceedings on use of the Bateman Ditch as a water conservation

8

measure." The Water Court therefore concluded that it correctly identified the scope of the controversy and appropriately tabulated "the rights that historically used the Bateman Ditch and the Spring Creek claims Fellows is seeking to protect."

¶16 On appeal, the *Perry* Defendants raise several points of error in asserting that the Water Court abused its discretion in denying their M. R. Civ. P. 59(e) motion, including: that the Water Court did not follow the law of the case; that certification under § 85-2-406(2)(b), MCA, was inappropriate; and that the Water Court failed to define the scope of the controversy, improperly determined the purpose of the tabulation, and inadequately tabulated the rights in controversy. We address each argument in turn.

¶17 First, the *Perry* Defendants contend that the law of the case established in *Fellows I* was not followed because Fellows's rights were not properly certified for determination with a modified Teton River source. They assert that in *Fellows I*, we implicitly contemplated that the purpose of certification "was for Fellows' rights to be determined as Teton rights vis-à-vis the *Perry* Decree users." They therefore contend that the Water Court abused its discretion in determining that Spring Creek is the source of Fellows's water right claims in controversy.

¶18 We are not persuaded by the *Perry* Defendants' contention that we implicitly concluded in *Fellows I* that Fellows's rights must be determined with a modified Teton River source. The *Perry* Defendants rely on the well-established rule that when we state in an opinion "a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent

9

progress . . . ." *Fiscus v. Beartooth Elec. Coop.*, 180 Mont. 434, 437, 591 P.2d 196, 197 (1979) (citation and internal quotations omitted). In *Fellows I*, we stated multiple times explicitly that Spring Creek is the source of Fellows's water right claims involved in the controversy. *E.g.*, *Fellows I*, ¶¶ 2, 16, 21. We did not hold that the Water Court on certification must determine Fellows's rights as Teton River rights. Accordingly, we conclude that the Water Court adhered to the law of the case and therefore did not abuse its discretion in concluding that the source of Fellows's rights in controversy is Spring Creek, not the Teton River.

¶19 The *Perry* Defendants next argue that certification under § 85-2-406(2)(b), MCA, was improper based on a "holistic reading" of the statute. They contend that certification is appropriate under § 85-2-406(2)(b), MCA, only if the rights involved in the controversy have not yet been determined. Because the rights in controversy here are "determined claims," the *Perry* Defendants assert that the Water Court could perform only an enforcement tabulation pursuant to § 85-2-406(4), MCA. They next argue that the Water Court lacked jurisdiction under § 85-2-406(2)(b), MCA, to determine which parties and water rights were involved in the underlying water distribution controversy. The statute, they contend, requires that the District Court make those determinations prior to certification. Without a determination by the District Court as to which parties and which water rights are involved in the controversy, the *Perry* Defendants claim that certification under § 85-2-406(2)(b), MCA, was inappropriate.

10

¶20 In *Fellows I,* we pronounced that if Fellows could establish "hydrological connectivity between Spring Creek and the Teton River, then the next step should be certification to the chief water judge under § 85-2-406(2)(b), MCA." *Fellows I,* ¶ 21. Upon remand, the District Court established hydrological connectivity on summary judgment and then followed this Court's direction by certifying a question to the Water Court pursuant to § 85-2-406(2)(b), MCA.

¶21 The role of the judge in construing a statute "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. It is a well-established rule that "[w]hen construing a statute, it must be read as a whole, and its terms should not be isolated from the context in which they were used by the Legislature." *State v. Price,* 2002 MT 229, ¶ 47, 311 Mont. 439, 57 P.3d 42 (citing *State v. Nye,* 283 Mont. 505, 510, 943 P.2d 96, 99 (1997)). It also is well-established that "statutes should be construed according to the plain meaning of the language used therein." *Price,* ¶ 47 (citing *Nye,* 283 Mont. at 510, 943 P.2d at 99). Moreover, we have concluded, "Section 85-2-406(2)(b), MCA, should not be narrowly interpreted so as to frustrate solutions to water distribution controversies, but rather should be applied so as to allow for the expeditious resolution of these controversies." *Giese,* ¶ 16.

¶22 Section 85-2-406(2)(b), MCA, initially requires that a "water distribution controversy" exist before a party may petition a district court for certification. As the *Perry* Defendants acknowledge, this matter "is undeniably a water distribution

11

controversy"; therefore, the first requirement for certification under § 85-2-406(2)(b), MCA, is met. *Giese*, ¶ 11. The statute further provides that, for certification to be proper, the water distribution controversy must "arise[ ] upon a source of water in which not all existing rights have been conclusively determined according to part 2 of this chapter . . . ." Section 85-2-406(2)(b), MCA. We determined in *Giese* that certification under § 85-2-406(2)(b), MCA, was appropriate based in part on the fact "that not all existing rights on the Teton River have been conclusively determined." *Giese*, ¶ 15. We conclude that the plain meaning of the language used in § 85-2-406(2)(b), MCA, is that if all existing rights on the source of water in controversy have not been conclusively determined by final adjudication under the 1973 Water Use Act, then a party involved in a water distribution controversy may petition the court for certification.

¶23 Although the rights at issue here were decreed in *Perry* and *Sands*, those rights—along with other claimed existing water rights in Basin 41O—are subject to a temporary preliminary decree. *Teton Co-Op Canal Co. v. Teton Coop Reservoir Co.*, 2015 MT 344, 382 Mont. 1, ___ P.3d ___; *Teton Coop. Reservoir Co. v. Farmers Coop. Canal Co.*, 2015 MT 208, 380 Mont. 146, 354 P.3d 579; *Eldorado*; *Skelton Ranch, Inc. v. Pondera Cnty. Canal & Reservoir Co.*, 2014 MT 167, 375 Mont. 327, 328 P.3d 644; *Heavirland v. State*, 2013 MT 313, 372 Mont. 300, 311 P.3d 813. Water right claims in Basin 41O are still working their way through the adjudication process. *See* § 85-2-231(1), MCA (providing that the Water Court "may issue a temporary preliminary decree prior to the issuance of a preliminary decree if the temporary preliminary decree is necessary for the

12

orderly adjudication or administration of water rights"). As such, all the existing rights in the sources of water at issue here have not been conclusively determined pursuant to Title 85, chapter 2, part 2, MCA. *See* § 85-2-227(1), MCA (providing in pertinent part, "For purposes of administering water rights, the provisions of a temporary preliminary decree or a preliminary decree, as modified after objection and hearings, supersede a claim of existing right *until a final decree is issued*." (emphasis added)). Fellows is not seeking enforcement of a temporary preliminary decree under § 85-2-406(4), MCA, but determination of his rights and relative priorities in order to challenge delivery of water through the Bateman Ditch. Accordingly, Fellows's petition for certification was proper pursuant to § 85-2-406(2)(b), MCA.

¶24 The *Perry* Defendants next assert that the plain language of § 85-2-406(2)(b), MCA, permits only district courts to identify which parties and water rights are involved in the underlying water distribution controversy. Section 85-2-406(2)(b), MCA, provides, in relevant part, "If a certification request is made, the district court shall certify to the chief water judge the determination of the existing rights that are involved in the controversy according to part 2 of this chapter." We conclude that the plain language of the statute explicitly confers on the Water Court, when a district court requests, the authority to "determin[e] [ ] the existing rights that are involved in the controversy according to part 2 of this chapter." Section 85-2-406(2)(b), MCA.

¶25 The *Perry* Defendants' overly narrow interpretation of the statute would "frustrate solutions to water distribution controversies." *Giese*, ¶ 16. Our construction of the terms

13

used in the statute is consistent with the context in which the terms were used by the Legislature. Under Montana law, "the water court is vested with exclusive jurisdiction relative to *all matters* relating to the determination of existing water rights within the boundaries of the State of Montana." *Baker Ditch Co. v. District Ct.*, 251 Mont. 251, 255, 824 P.2d 260, 260 (1992) (emphasis added) (citing § 3-7-501, MCA; *Mildenberger v. Galbraith*, 249 Mont. 161, 815 P.2d 130 (1991)). Given the Water Court's comprehensive oversight of the adjudication process, its jurisdiction necessarily includes the authority to identify those parties and rights involved in a water distribution controversy based on the adjudication process, the claims made in the affected area, and the evidence before the Water Court. *See Giese*, ¶ 18 (instructing a district court "to certify *all appropriate issues* to the Chief Water Judge as provided in § 85-2-406(2)(b), MCA . . ." (emphasis added)). Accordingly, we conclude that under the plain language and the context of the terms used in § 85-2-406(2)(b), MCA, the Water Court has authority to determine which parties and rights are involved in a water distribution controversy certified by a district court. Such an application of the statute will "allow for the expeditious resolution of these controversies." *Giese*, ¶ 16.

¶26 The *Perry* Defendants' final contention is that the Water Court failed to define adequately the scope of the controversy based on the parties' pleadings. They assert that the Water Court reframed the scope of the controversy too narrowly because "in order to fully determine the water distribution controversy pled by Fellows, it is necessary to determine the validity of the water right claims of [all of the named Defendants] allegedly

14

causing damage to Fellows." The *Perry* Defendants allege that the underlying controversy is broader than the Water Commissioner's use of the Bateman Ditch because Fellows alleged in his complaint that the named Defendants were appropriating his "recharge water," giving rise to a claim for damages. Because the Water Court did not include all of the named Defendants in its order, they assert that the Water Court provided the District Court with an incomplete tabulation of the rights in controversy. Furthermore, they contend that the Water Court made an incorrect conclusion that the purpose of the certification was not enforcement of rights.

¶27 In its final order, the Water Court concluded that "[t]he scope of certification refers to the water right claims that require a review by the Water Court in order to provide the necessary information to the District Court." The Water Court further determined that "[t]he point of certification is to provide sufficient information to the District Court to facilitate resolution of the underlying water distribution controversy," and that "[t]he scope of the certification is typically defined by that underlying controversy." In determining the scope and the purpose of the certification, the court concluded:

> Fellows requested certification for a limited purpose. He seeks the right to object if other water users ask to divert water into the Bateman Ditch as a water saving measure. He is not questioning the elements of any specific water right. He has not asserted the right to place a call on any specific water right. The water right claims involved need not include all Basin 41O water rights that may benefit from use of the Bateman Ditch as a water saving measure or all water rights that may, through their use, have an adverse impact on the Springhill Reach or Spring Creek. Fellows is specifically asking for the right to participate in any future proceeding on use of the Bateman Ditch as a water saving measure, he is not seeking

15

enforcement of all water rights and permits upgradient from his point of diversion.

The Water Court noted that we had affirmed its prior tabulation of water right claims associated with the Bateman Ditch in *Eldorado*, and concluded that the "same water right claims identified in the [*Eldorado*] tabulation are at issue in this certification case." As such, the Water Court concluded that Saylor's, Choteau Cattle Company's, and Fellows's water right claims are the existing rights that are involved in the underlying controversy before the District Court.

¶28 We agree with the Water Court that the purpose of certification under § 85-2-406(2)(b), MCA, is to provide sufficient information to the District Court to facilitate resolution of the underlying water distribution controversy. *See Giese*, ¶ 16 (concluding that § 85-2-406(2)(b), MCA, "should be applied so as to allow for the expeditious resolution of [water distribution] controversies"). We therefore agree that the underlying water distribution controversy defines the scope of the certification. The Water Court's order, like any court's judgment, "must be within the issues presented to the court." *Nat'l Sur. Corp. v. Kruse*, 121 Mont. 202, 205-06, 192 P.2d 317, 319 (1948). Accordingly, the Water Court properly looked to Fellows's First Amended Complaint in determining the scope of the controversy and purpose of the certification.

¶29 A review of that complaint establishes that Fellows alleged that maintaining the flow of Spring Creek is dependent upon "Recharge Water" seeping through a subsurface aquifer located at the Springhill Reach. Fellows further alleged that the Water Commissioner "altered the delivery of water in [*Perry*] to allow for diversion and use of

16

Recharge Water by unknown water users ('Defendants')" by means of the Bateman Ditch. Fellows claimed that the Water Commissioner's practice of diverting water through the Bateman Ditch impaired the use of his Spring Creek rights. Fellows therefore sought to enjoin the Water Commissioner from using the Bateman Ditch as a water management tool and pursued relief from the practice under both private and public nuisance as well as negligence theories.

¶30 The *Perry* Defendants' assertions that the Water Court erred in defining the scope of the controversy and determining the purpose of the certification are unpersuasive. Based on our review of the issues presented in Fellows's Amended Complaint, we conclude that the Water Court properly opined that Fellows requested certification for the limited purpose of obtaining the right to object when water was diverted through the Bateman Ditch. His complaint specifically sought an injunction "barring the distribution, diversion or use of Recharge Water" by means of the Bateman Ditch. Furthermore, the Water Court correctly determined that the scope of the certification was limited to use of the Bateman Ditch. Fellows's complaint alleges that the groundwater aquifer located at the Springhill Reach is the primary source of water in Spring Creek; therefore, he asserts, the diversion of water through the Bateman Ditch impacts his Spring Creek rights. The Water Court appropriately confined its order to the controversy before the District Court—use of the Bateman Ditch to deliver water.

¶31 Moreover, the Water Court did not err in determining that the claims properly before the court on certification were Saylor's and Choteau Cattle Company's Teton

17

River water right claims and Fellows's Spring Creek water right claims. Upon certification, the Water Court is tasked with determining "the existing rights that are *involved* in the controversy . . . ." Section 85-2-406(2)(b), MCA (emphasis added). As the Water Court noted, we concluded in *Eldorado* that it properly tabulated the "water rights that can be diverted through the Bateman Ditch." *Eldorado*, ¶ 36. Because the scope of the instant controversy is limited to the use of the Bateman Ditch, it was unnecessary for the Water Court to tabulate rights beyond those that historically have used the Bateman Ditch and Fellows's Spring Creek rights. The Water Court properly determined the existing rights involved in the controversy.

¶32 The only purpose of the certification order is the tabulation and relative priority of Fellows's Spring Creek rights and the rights of those using the Bateman Ditch for delivery of their Teton River water. It will be in the District Court—when and if Fellows challenges use of the Bateman Ditch as a management tool—that he will need to prove that diverting water through the ditch actually and as a matter of hydrological fact impairs his water right. It is then the District Court's function to "supervise the distribution of water among all appropriators." Section 85-2-406(1), MCA.

¶33 Although the *Perry* Defendants make additional arguments, we conclude that the contentions discussed above are dispositive. Based on the foregoing analysis, we conclude the following: that the Water Court correctly determined that Spring Creek is the source of Fellows's rights involved in the controversy; that certification pursuant to § 85-2-406(2)(b), MCA, was proper; and that the Water Court did not err in determining

18

the scope of the controversy, defining the purpose of the certification, or tabulating the applicable rights involved in the controversy. Accordingly, we hold that the Water Court did not abuse its discretion in denying the *Perry* Defendants' motion to amend and that the water right claims in controversy were properly determined following this Court's remand in *Fellows I*.

¶34 *2. Whether the District Court erred in granting Fellows's motion for substitution.*

¶35 Section 3-1-804, MCA, provides for the substitution of district court judges; it provides, however, that there is no right of substitution of "a judge supervising the distribution of water under 85-2-406, including supervising water commissioners under Title 85, chapter 5, part 1." Section 3-1-804, MCA. The *Perry* Defendants assert that the substitution of Judge Olson was improper because this case is "undeniably a water distribution controversy . . . ." The *Perry* Defendants further contend that the issue is properly before this Court on appeal. They rely on M. R. App. P. 6(1), which provides that this Court may review "all previous orders and rulings excepted or objected to which led to and resulted in the judgment." Finally, they argue that the appeal is timely pursuant to M. R. App. P. 6(3)(k).

¶36 Under M. R. App. P. 6(3)(k), an aggrieved party in a civil case may appeal "[f]rom an order granting or denying a motion for substitution of judge" so long as "the order is the court's final decision on the referenced matter." In civil cases, M. R. App. P. 4(5)(a)(i) requires that "the notice of appeal shall be filed with the clerk of the supreme court within 30 days from the date of entry of the judgment or order from which the

19

appeal is taken." M. R. App. P. 4(2)(c) provides, "Except where the supreme court grants an out-of-time appeal under section (6) of this rule, the timely filing of a notice of appeal or cross-appeal is required in order to invoke the appellate jurisdiction of the supreme court." We conclude that an order pertaining to a motion for substitution of judge under M. R. App. P. 6(3)(k) must satisfy M. R. App. P. 4's requirements for being timely. Substitution of a presiding judge is a right that is lost if not exercised early in the case. Section 3-1-804(1)(a), MCA (providing that a motion for substitution in a civil action must be filed within thirty days after either "the first summons is served or an adverse party has appeared[,] . . . [or] after service has been completed in compliance with M. R. Civ. P. 4," depending on which party files the motion).

¶37 It would defeat the purpose of the rule to allow a party to appeal a substitution order only after the case has been finally decided. Here, the order granting Fellows's motion for substitution of judge was entered in August 2013. The parties thereafter engaged in discovery and summary judgment proceedings in the District Court. That court certified the case to the Water Court, which conferred with the parties, reviewed the District Court record, issued its opinion and an order on certification, and then considered and denied a motion to alter or amend its order. The process consumed approximately two years. Now that the decision is made, the *Perry* Defendants seek to begin the process anew because the initial substitution of Judge Olson was improper. The rules do not support their argument. We conclude that the *Perry* Defendants' appeal of the

substitution order is untimely because the notice of appeal from the order was not filed within 30 days.

¶38 Upon remand, however, the case will return to Judge Olson as the judge responsible under § 85-2-406(1), MCA, for supervising both the distribution of water under *Perry* and *Sands* and the Water Commissioners appointed to administer the water under both decrees.

## CONCLUSION

¶39 We affirm the Water Court's order denying the *Perry* Defendants' M. R. Civ. P. 59(e) motion and remand to the Ninth Judicial District Court, the Honorable Robert Olson presiding, for further proceedings.


/S/ BETH BAKER


We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA