FILED

03/21/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0297

DA 16-0297

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 62

HOUSTON LAKESHORE TRACT OWNERS
AGAINST ANNEXATION INC., and
STOCKING ADDITION OWNERS
AGAINST ANNEXATION, INC.,

        Plaintiffs and Appellants,

   v.

CITY OF WHITEFISH,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                     In and For the County of Flathead, Cause No. DV-15-430(B)
                     Honorable Robert B Allison, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Bruce A. Fredrickson, Rocky Mountain Law Partners, PLLP,
                Kalispell, Montana

        For Appellee:

                Angela Jacobs Persicke, Whitefish City Attorney, Whitefish, Montana

                             Submitted on Briefs:  November 30, 2016

                                   Decided:  March 21, 2017

Filed:

                             _____
                                        Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Houston Lakeshore Tract Owners Against Annexation, Inc. and Stocking Addition Owners Against Annexation, Inc. (collectively Property Owners) appeal from the order of the Eleventh Judicial District Court, Flathead County, granting the City of Whitefish's (City) cross-motion for summary judgment.  We affirm.

¶2     We restate the issues on appeal as follows:

*Issue one:  Did the District Court err in determining that the City may properly rely on Title 7, chapter 2, part 45, MCA, to annex the Houston Lakeshore Area?*

*Issue two:  Did the District Court err in finding that the Houston Lakeshore Area is "wholly surrounded" by the City?*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3     The Property Owners collectively own numerous properties on or near Whitefish Lake in Whitefish, Montana (Houston Lakeshore Area).  The Houston Lakeshore Area is located north of the City and consists of the Houston Lake Shore Tracts subdivision, the Stocking Addition Tracts B and C, and five parcels known as Tract 1AB, Tract 1ABA, Tract 1ABB, Tract 1ABC, and Tract 1G.  The City has annexed ten tracts in the Houston Lake Shore Tracts and three tracts in the Stocking Addition Tracts C.  The area is bounded by Whitefish Lake to the west and south and by City territory to the north and east.  The Property Owners access the area via East Lakeshore Drive, which borders the Houston Lakeshore Area to the east.  To access their individual properties, the Property Owners turn off East Lakeshore Drive and onto Houston Drive.

¶4     In 1981, the City passed Resolution No. B-916, annexing a section of East Lakeshore Drive between Reservoir Road and the North boundary of Lot 1, Block 1 of

2

the Houston Point Subdivision. The City annexed this section of the road without receiving a request for annexation from the state of Montana. In 2005, upon petition by the State, the City passed Resolution No. 05-25, annexing Whitefish Lake to its low water mark. The resolution cited a 1987 Attorney General Opinion, which ruled that the bounding of Whitefish Lake on one or more sides of a tract or parcel does not preclude the area from being annexed under the "wholly surrounded" method of annexation.[1]

¶5 Piecing together a survey of the area provided in the record and the interactive parcel map maintained by the Flathead County GIS Department, the Houston Lakeshore Area is situated as follows:



---

[1] 42 Mont. Att'y Gen. Op. 41, 1987 Mont. AG LEXIS 9 (Nov. 18, 1987).

¶6    On October 6, 2014, the City passed Resolution No. 14-49, which, in part, acknowledged the City's decision to advance the Houston Lakeshore Area to the first priority area for annexation. The City has not given or published a notice of annexation, nor has it passed a resolution of annexation for the area. On May 22, 2015, the Property Owners filed a complaint seeking a declaratory judgment that, under that Title 7, chapter 2, part 45, MCA: 1) the City has no statutory authority to combine separate tracts for purposes of annexation; and 2) the Houston Lakeshore Area is not wholly surrounded for the purposes of annexation. The parties filed cross-motions for summary judgment and, on March 14, 2016, the District Court granted the City's motion. The Property Owners filed a timely appeal.

## STANDARD OF REVIEW

¶7    We review a district court's grant of summary judgment de novo, applying the same criteria of M. R. Civ. P. 56 as the district court. *Pilgeram v. GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839. We review a district court's conclusions of law to determine whether they are correct and its findings of fact to determine whether they are clearly erroneous. *Pilgeram*, ¶ 9. Under Rule 56(c), summary judgment will be granted if the moving party can show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Roe v. City of Missoula*, 2009 MT 417, ¶ 14, 354 Mont. 1, 221 P.3d 1200.

**DISCUSSION**

¶8 *Issue one: Did the District Court err in determining that the City of Whitefish may properly rely on Title 7, chapter 2, part 45, MCA, to annex the Houston Lakeshore Area?*

¶9 The Property Owners first appeal the District Court's finding that Title 7, chapter 2, part 45, MCA, entitled "Annexation of Wholly Surrounded Land," does not limit a city's annexation of wholly surrounded land to a single tract or parcel of land. The court determined that the statutory provisions allowing for annexation of wholly surrounded areas are triggered, not by the number of parcels a city seeks to annex, but instead by the geographic characteristics the freehold territory exhibits in relation to the city seeking to annex it. On appeal, the Property Owners urge this court to hold that the wholly surrounded annexation provisions be interpreted to limit a city's annexation powers to single tracts or parcels of land.

¶10 "[W]hen interpreting a statute, we seek to implement the objectives the Legislature sought to achieve, and if the legislative intent can be determined from the plain language of the statute, the plain language controls." *Montanans v. State*, 2006 MT 277, ¶ 60, 334 Mont. 237, 146 P.3d 759. "Furthermore, a statute 'must be read as a whole, and its terms should not be isolated from the context in which they were used by the Legislature.'" *Eldorado Coop Canal Co. v. Hoge*, 2016 MT 145, ¶ 18, 383 Mont. 523, 373 P.3d 836 (quoting *Fellows v. Saylor*, 2016 MT 45, ¶ 21, 382 Mont. 298, 367 P.3d 732) (citation omitted). Accordingly, we must interpret a statute "as a part of a whole statutory scheme and construe it so as to forward the purpose of that scheme" and "to avoid an absurd result." *Eldorado Coop Canal Co.*, ¶ 18 (quoting *Stokes v. Mont. Thirteenth Judicial*

5

*Dist. Court*, 2011 MT 182, ¶ 15, 361 Mont. 279, 259 P.3d 754) (citation omitted); *In re Marriage of Shirilla*, 2004 MT 28, ¶ 12, 319 Mont. 385, 89 P.3d 1. Further, while our role is "not to insert what has been omitted or to omit what has been inserted," the general rules of statutory construction also dictate that "[t]he singular includes the plural and the plural includes the singular." Sections 1-2-101, -105(3), MCA.

¶11 Under Montana statutory law, cities are authorized to annex freehold properties without prior request or petition if the property: 1) is contiguous to, or shares a common border with, city territory; or 2) is wholly surrounded by city territory.[2] Sections 7-2-4301 thru -4331, MCA (annexation of contiguous land); §§ 7-2-4501 thru -4511, MCA (annexation of wholly surrounded land). The contiguous land method differs from the wholly surrounded method in that the contiguous land method allows either the majority of registered voters or the majority of real property owners in the proposed annexation area to vote against[3] or override[4] the annexation, while the wholly surrounded method does not. Sections 7-2-4314 (1)(c), (d), -4502, MCA.

---

[2] In addition to the annexation provisions in Title 7, chapter 2, parts 43 and 45, MCA, which the District Court referred to as granting cities "compulsory annexation authority," three other types of voluntary annexation procedures also exits in the code. Sections 7-2-4401 thru -4421, MCA (annexation of contiguous government land); §§ 7-2-4601 thru -4625, MCA (annexation by petition); §§ 7-2-4701 thru -4761, MCA (annexation with the provision of services).

[3] Section 7-2-4314(1)(c), MCA, states: "Except as provided in subsection (1)(d) . . . the city or town council shall submit the question of approving the resolution to the registered voters residing in the area proposed for annexation. A notice of election must be mailed to all registered voters residing in the area proposed for annexation."

[4] Section 7-2-4314(1)(d), MCA, states: "If the area to be annexed contains fewer than 300 recorded parcels, the city or town council, after considering all written communication, may adopt a resolution approving the annexation without an election and the boundaries of the city or town must be extended to include the platted tracts or parcels of land or unplatted land for which

6

¶12    Under the wholly surrounded method of annexation of Title 7, chapter 2, part 45, MCA, "A city may include as part of the city any platted or unplatted tract or parcel of land that is wholly surrounded by the city upon passing a resolution of intent, giving notice, and passing a resolution of annexation."   Section 7-2-4501, MCA.   Section 7-2-4502, MCA, reiterates the mechanism by which wholly surrounded freehold territory is deemed annexed by a municipality:

> Wholly surrounded land is annexed, if so resolved by the city or town council, whether or not a majority of the real property *owners of the area* to be annexed object.  The question of annexing the wholly surrounded land is not subject to being voted on by the registered *voters of the area* to be annexed.

Section 7-2-4502, MCA (emphasis added).  Additionally, § 7-2-4504, MCA, states:

> *Tracts or parcels* of land proposed to be annexed to a city or town under the provisions of this part shall be deemed contiguous to such city or town even though such *tracts or parcels* of land may be separated from such city or town by a street or other roadway, irrigation ditch, drainage ditch, stream, river, or a strip of unplatted land too narrow or too small to be platted.

Section 7-2-4504, MCA (emphasis added).

¶13    The contiguous and wholly surrounded annexation provisions were previously codified at § 11-403, RCM (1947).  Prior to 1959, cities were only authorized to annex contiguous tracts and parcels of land.  *See* § 11-403, RCM (1947) (*amended by* 1957 Mont. Laws 533-35).  The 1959 amendment to § 11-403, RCM (1947), as introduced by House Bill 317, added the following language to the statute:

---

a certificate of survey has been filed. . . .   However, a city or town council may not annex by resolution an area containing fewer than 300 recorded parcels if the resolution is disapproved in writing by a majority of real property owners of the area proposed to be annexed."

> Provided also, that cities . . . may include as part of such city any platted or unplatted tract or parcel of land that is wholly surrounded by such city upon passing a resolution advertising and upon passing a further resolution or following such advertising, all in the manner aforesaid, and such land shall be annexed, if so resolved, whether or not a majority of the resident freeholders, if any, of the land to be annexed object. . . .

1957 Mont. Laws 533-35 (codified at § 11-403, RCM (1947)).  The title to HB 317 stated, in pertinent part:

> An act to amend section 11-403, Revised Codes of Montana, 1947, . . . relating to extension of boundaries to include contiguous platted tracts or other parcels of land by cities . . .; to provide for the annexation of platted or unplatted *tracts or parcels of land wholly surrounded by cities . . . .*

H. Journal, 36th Leg., Reg. Sess. 181 (Mont. 1959) (emphasis added).  During the discussion of HB 317 in the Senate Committee on City and Town Affairs, one of the bill's sponsors offered the following explanation for the proposed amendment:

> Representative James Batt[i]n from Yellowstone County came into the meeting and explained a map he had colored sections on representing the isolated sections in Billings that the [current] law exempts because it is unpl[a]tted.  They pay nothing towards the upkeep of the city and still enjoy all of the benefits.

*S. Comm. on City and Town Aff.*, 36th Leg., Reg. Sess. (Mont. February 25, 1959) (transcript available from the Montana Historical Society).

¶14   In *Harrison v. Missoula*, 146 Mont. 420, 407 P.2d 703 (1965), we expounded upon the Legislature's rationale for enacting the contiguous and wholly surrounded methods of annexation:

> The shift of population from rural to urban since 1940 is a matter of common knowledge.  Montana within the past few years has become a state wherein more people live within incorporated cities and towns than reside in the country.  The City of Missoula is one of the fastest growing cities in the state and one of its problems is the suburban areas.  Most of the people

8

who live in such areas earn their livelihood in the city. A large percentage of these people market and shop in the city, use the streets and facilities furnished by its public utilities and no one can question that the city is the hub of the commercial, civic and social life of these people. The very reason the legislature passed [S]ection 11-403, R.C.M. 1947, was to care for this situation. To hold otherwise would be to handcuff the orderly development of the city.

*Harrison*, 146 Mont. at 426-27, 407 P.2d at 707. In *Brodie v. Missoula*, 155 Mont. 185, 468 P.2d 778 (1970), we reiterated that the purpose of these annexation procedures is to "permit the orderly and uniform extension of city boundaries and city services with urban growth." *Brodie*, 155 Mont. at 192, 468 P.2d at 782.

¶15 The Property Owners argue that this Court should read § 7-2-4501, MCA, in isolation from §§ 7-2-4502 and -4504, MCA, and instead rely on a secondary source[5] and a different title of the Code, namely Title 76, to define "tract or parcel." We decline to do so. While we recognize that we often turn to such sources to interpret words left undefined in a statute, we conclude that doing so in this case would lead to an interpretation plainly contrary to the Legislature's intent. *See* § 1-2-107, MCA ("Whenever the meaning of a word or phrase is defined in any part of this code, such definition is applicable to the same word or phrase wherever it occurs, *except where a contrary intention plainly appears*.") (emphasis added)). In this case, when we read § 7-2-4501, MCA, alongside §§ 7-2-4502 and -4504, MCA, and further apply the canon of statutory interpretation that generally requires us to conclude that "the singular means the plural," it is clear that the Legislature contemplated and intended to allow cities to

---

[5] Specifically, the Property Owners urge us to adopt the definition of "tract" and "parcel" from *Black's Law Dictionary* 1286, 1720 (Bryan A. Garner ed., 10th ed. 2014).

9

annex wholly surrounded multiple tracts or parcels in a single resolution. Had the Legislature intended for only single tracts or parcels to be annexed under the wholly surrounded method, it could have drafted the language of §§ 7-5-4502 and -4504, MCA, to reflect such an intention. Instead, the Legislature chose to use the plural form of the words emphasized above in crafting the sections proceeding § 7-2-4501, MCA, and we presume this to be intentional.

¶16 Further, the legislative history of § 11-403, RCM (1947), the antecedent of § 7-2-4501, MCA, supports the conclusion that the wholly surrounded method allows for the annexation of multiple tracts or parcels because the title of the amending act uses the plural form of the words "tract" and "parcel." Moreover, if we were to interpret § 7-2-4501, MCA, as the Property Owners suggest, we would fail to give effect to the purpose of the wholly surrounded method of annexation that this Court recognized in *Brodie* and *Harrison*. Disallowing cities to annex multiple tracts or parcels in a single act would handcuff the ability of a city to grow its boundaries in an orderly fashion. It would also allow those who reap municipal benefits to shirk their responsibility to share in the cost of the benefits they enjoy as de facto city residents. Given our precedent interpreting the precursor to Title 7, chapter 2, part 45, MCA, this is clearly a consequence the Legislature intended to avoid.

¶17 Lastly, restricting a city's ability to annex multiple tracts or parcels in a single resolution would lead to an absurd result; namely, cities would be left to annex wholly surrounded freehold properties in a piecemeal, inefficient fashion, even where, as here, the area is bounded by city territory on all sides of the development. Alternatively, cities

10

would be forced to annex areas using the contiguous method of annexation in such cases. Since this method allows the real property owners of the area to reject annexation through an election or written disapproval, property owners could block annexation indefinitely yet continue to benefit from city services and infrastructure without contributing to the cost of such city amenities. As the District Court explained:

> This result is not only antithetical to the overall ten[or] and purpose of the statute, but it evades common sense because such a reading forces cities to "shoe string" annex single parcels as no single parcel within a single subdivision could ever be "wholly surrounded." The legislature does not perform such useless acts.

¶18 In sum, when we read §§ 7-2-4502 and -4504, MCA, in harmony with § 7-2-4501, MCA, and take into account the Legislature's purpose in providing for this method of annexation, the only logical interpretation of the statute that gives effect to all sections of Title 7, chapter 2, part 45, MCA, is one that allows a city to annex multiple tracts or parcels if city territory wholly surrounds the area to be annexed. Accordingly, we agree with the District Court and hold that a city may annex multiple tracts or parcels under Title 7, chapter 2, part 45, MCA, because the wholly surrounded method of annexation is triggered by the geographic relationship between the freehold territory and the city, and not by the number of tracts or parcels a city seeks to annex.

¶19 *Issue two: Did the District Court err in finding that the Houston Lakeshore Area is "wholly surrounded" by the City?*

¶20 The Property Owners next argue that, even if the City can annex the entire area in a single resolution, the Houston Lakeshore Area is not wholly surrounded by the City under the test announced by this Court in *Calvert v. City of Great Falls*, 154 Mont. 213,

11

462 P.2d 182 (1969). In *Calvert*, we held that "[t]he term 'wholly surrounded' means that a tract of land where all lands on the side of the tract are within the city and where it is impossible to reach the tract without crossing such territory, the tract is 'wholly surrounded.'" *Calvert*, 154 Mont. at 217, 462 P.2d at 184.

¶21 Both the District Court's order and both parties' briefs refer to the "two-prong test" of *Calvert*. However, in *Calvert*, we did not create a rigid two-step framework to determine whether a property is wholly surrounded.[6] Rather, *Calvert* announced an analytical framework that is restricted to a single inquiry: that is, whether a tract or parcel is entirely surrounded by city territory, thus requiring one to cross city territory in order to access the area. Therefore, we first take this opportunity to clarify *Calvert* and return to the test announced therein: specifically, to the single inquiry framework originally embraced by this Court and elucidated above and in *Calvert* itself.

¶22 The Property Owners first argue that the Houston Lakeshore Area does not satisfy the *Calvert* test because the area is only minimally bounded by City property. Specifically, the Property Owners maintain that the area is not bounded by City property to the south and west because Resolution No. 05-25 prevents the City from using Whitefish Lake as a way to create contiguity for the purposes of annexation. The District

---

[6] Indeed, the so-called "two-prong test" of *Calvert* does not find its origins in *Calvert* itself, but rather in a single subsequent case, *Missoula Rural Fire Dist. v. City of Missoula*, 283 Mont. 113, 116, 938 P.2d 1328, 1330 (1997) (*Missoula Rural I*). *Compare Missoula Rural I, with Missoula Rural Fire Dist. v. City of Missoula*, 286 Mont. 387, 396, 950 P.2d 758, 763 (1997) (*Missoula Rural II*) ("Interpreting § 7-2-4501, MCA, we have defined a 'wholly surrounded' tract of land as one 'where all lands on the side of the tract are within the city and where it is impossible to reach the tract without crossing such territory.'") (quoting *Calvert*, 154 Mont. at 217, 462 P.2d at 184).

12

Court found the Houston Lakeshore Area to be wholly surrounded by the city, even at the exclusion of Whitefish Lake.

¶23    *Calvert* requires that all sides of the area to be annexed under the wholly surrounded method be within city territory: however, the four corners of an area need not touch city territory in order for it to be considered "wholly surrounded." *Calvert*, 154 Mont. at 216-17, 462 P.2d at 184.  In *Calvert*, the plaintiffs challenged the annexation of their property by the City of Great Falls, Montana, because an outdoor theater, an exempt tract,[7] was included within the area to be annexed and fronted a city street, thus breaking what the plaintiffs referred to as the "circle of contiguity." *Calvert*, 154 Mont. at 215, 462 P.2d at 183.  In upholding the annexation, we held that property need not be wholly contiguous to city territory in order for it to be wholly surrounded by it for the purposes of annexation.  *Calvert*, 154 Mont. at 217, 462 P.2d at 184 (citing *Penland v. Missoula*, 132 Mont. 591, 318 P.2d 1089 (1957)).

¶24    In this case, City territory borders the Houston Lakeshore Area on three sides of the property, while Whitefish Lake borders the area on the remaining sides.   In Resolution No. 05-25, the City annexed the lake, but also established a policy agreeing to refrain from using the contiguous land and wholly surrounded methods of annexation to annex lakeshore property not otherwise contiguous to the City.  In other words, the City agreed not to use Whitefish Lake *alone* to create contiguity or to wholly surround an area. However, as the City points out, the resolution retained the City's ability to use the

---

[7] Under § 7-2-4503(2), MCA, previously codified at § 11-403, RCM (1947), certain types of land are excluded from the wholly surrounded annexation method, including land used "for the purpose of . . . a place for public or private outdoor entertainment. . . ."

13

wholly surrounded method for properties surrounded on three sides by City territory and also bordered by the lake on the remaining sides of the area. Indeed, the resolution adopted the findings of a 1987 Attorney General Opinion, which found that an area wholly surrounded by the City and by Whitefish Lake may be annexed under Title 7, chapter 2, part 45, MCA. Thus, we cannot say that the resolution precludes the City from annexing the Houston Lakeshore Area.

¶25    Furthermore, we find the Attorney General Opinion relied upon by the City persuasive and adopt its finding that the term "wholly surrounded" must "be practically interpreted to achieve the legislative objective of permitting annexation when a particular parcel has become, in essence, landlocked by a municipality." 42 Mont. Att'y Gen. Op. 41, 1987 Mont. AG LEXIS at *4. As such, we also agree with the Attorney General's assessment that a tract or parcel, bordered by both city territory and by a large navigable lake, is "wholly surrounded" when, as to the sides bordered by *land*, it is surrounded by the municipality. 42 Mont. Att'y Gen. Op. 41, 1987 Mont. AG LEXIS at *4. In this case, the Houston Lakeshore Area has become landlocked by the City because, as to the three sides bordered by land, it is bounded by the City. Consequently, we conclude that the area meets this requirement of *Calvert* because all lands on the side of the area to be annexed are within the City.

¶26    The *Calvert* test also provides that an area is wholly surrounded when it is impossible to access the area without crossing city territory. *Calvert*, 154 Mont. at 217, 462 P.2d at 184. The Property Owners argue that since, in their view, the City improperly annexed a portion of East Lakeshore Drive, the road they use to reach their

14

property in fact belongs to the state of Montana and they need not cross City territory to access the Houston Lakeshore Area. The Property Owners also contend that because they could technically reach their property by boat, and because the water of Whitefish Lake is owned by the State, they need not cross City territory in order to reach their property.

¶27   As to the latter argument, we need only refer back to the Attorney General Opinion we cite with approval above. Again, when determining whether an area is 'wholly surrounded," we are only concerned with those tracts or parcels surrounded by land, and not with a body of water that borders the area on one or more sides. Accordingly, with respect to reaching the tract or parcel, we are also only concerned with how one accesses the area over land and we will not contemplate access to tracts or parcels by water.[8]

¶28   As for the former argument, the District Court found the validity of the prior annexation of East Lakeshore Drive immaterial because under § 7-2-4504, MCA, a road, in and of itself, cannot be a determinative factor as to whether a tract or parcel is wholly surrounded for purposes of annexation. We also find the validity of the road annexation immaterial in this case, but for a different reason: namely, we find that this issue is not properly before the Court because the issue has not previously been adjudicated and because the Property Owners' cause of action did not seek a declaration that the road

_____

[8] We note that the Property Owners did not provide the District Court with any evidence that they only access their property by such means and it would be a rare case indeed where a property owner did not access their property by land. Additionally, in this case, since the City annexed Whitefish Lake in Resolution No. 05-25, the Property Owners would in fact cross City territory if they accessed their property by boat.

15

annexation was invalid. In this case, the Property Owners sought a general declaration that the Houston Lakeshore Area is not wholly surrounded under § 7-2-4501, MCA, and then later alleged that the road annexation was void ab initio because the City failed to comply with Title 7, chapter 2, part 44, MCA. However, the Property Owners' allegation that the road annexation is void, brought without a prior judicial determination that the annexation is invalid, exceeds the scope of a declaratory action. "Courts do not function, even under the Declaratory Judgments Act, to determine speculative matters, to enter anticipatory judgments, to declare social status, to give advisory opinions or to give abstract opinions." *Donaldson v. State*, 2012 MT 288, ¶ 9, 367 Mont. 228, 292 P.3d 364, (citing *Mont. Dep't Natural Res. & Conservation v. Intake Water Co.*, 171 Mont. 416, 440, 558 P.2d 1110, 1123 (1976)). The City contends that the annexation is valid in every respect and the record contains a copy of Resolution No. B-916. Thus, for our purposes, and until a party with standing[9] seeks a determination that the road annexation is invalid and the resolution is void, the section of East Lakeshore Drive between Reservoir Road and the North boundary of Lot 1, Block 1 of the Houston Point Subdivision is deemed City territory.

---

[9] Note that when plaintiffs do not own property within the proposed annexation, this Court has held that they do not have standing to directly or collaterally attack the annexation resolution. *See Knudsen v. Ereaux*, 275 Mont. 146, 151, 911 P.2d 835, 838 (1996) (rejecting an argument by the property owners "to allow a party to challenge an annexation if the 'party's land is directly and uniquely affected by the annexation.'") (citing *O'Donnell Fire Serv. and Equip. Co. v. City of Billings*, 219 Mont. 317, 322, 711 P.2d 822, 825 (1985)); *see also Nilson Enters. v. Great Falls*, 190 Mont. 341, 621 P.2d 466 (1980) (concluding that where a taxpayer filed a complaint against the City arguing that an assessment was invalid as it was based on an invalid annexation, the Court conferred standing where the taxpayer paid the assessment under protest and where the taxpayer's property was included within the city limits by virtue of the challenged annexation).

¶29　The District Court also pointed out that the *Calvert* test contemplates access across city *territory* to reach the area to be annexed*, not access across city *roads*. Indeed, in *Missoula Rural Fire Dist. v. City of Missoula*, 283 Mont. 113, 938 P.2d 1328 (1997) (*Missoula Rural I*), we commented that motor vehicle routes for ingress and egress to the residential properties in question "require[d] travel of at least three miles *through* Missoula city limits," not *on* city roads.[10] *Missoula Rural I*, 283 Mont. at 114, 938 P.2d at 1329 (emphasis added). Additionally, in *Missoula Rural Fire Dist. v. City of Missoula*, 286 Mont. 387, 950 P.2d 758 (1997) (*Missoula Rural II*), the Court considered an annexation where city roadways, annexed prior to annexing the area in question, bordered the area. *Missoula Rural II*, 286 Mont. at 389, 950 P.2d at 759. The property owners challenged the annexation, arguing that the city could not rely on the annexed streets to wholly surround their tracts of land. *Missoula Rural II*, 286 Mont. at 391-92, 950 P.2d at 760-61. The Court disagreed, holding that a street could be considered contiguous to other land for purposes of annexation and concluding, in relevant part, that the area met the *Calvert* test "because it was impossible to reach any of the tracts without crossing City territory, however narrow." *Missoula Rural II*, 286 Mont. at 396, 950 P.2d at 763. However, while we held in *Missoula Rural II* that an annexed city street may be used to wholly surround an area, we did not conclude that access to the area must occur over annexed roads. The language of § 7-2-4504, MCA, makes clear that tracts or parcels are

---

[10] The main road leading to the Upper Rattlesnake Area, Rattlesnake Drive, is a State Route maintained by the City of Missoula. *City Limits Map, City of Missoula, Montana* (available at ftp://ftp.ci.missoula.mt.us/Maps%20and%20Graphics/City%20Maps/PDF/Citymap.pdf) (January 9, 2017).

contiguous to a city even though the area is separated from city territory "by a street or other roadway." Section 7-2-4504, MCA. The District Court correctly interpreted this section when it held that an area to be annexed is wholly surrounded even when an intersecting roadway separates the area from the existing city territory that must be crossed to reach it.

¶30 Here, the map provided above illustrates that when the Property Owners travel on East Lakeshore Drive, from either the south or north, they must pass through several tracts of city territory. Even when the Property Owners turn off East Lakeshore Drive and onto Houston Drive, the majority of the Property Owners must pass through interspersed tracts of annexed city territory to access their property, specifically the Houston Lake Shore Tracts 11, 13 and 15, and the Stocking Addition Tracts C1, C3, and C5. As such, in order to access the Houston Lakeshore Area by road, the Property Owners must cross City territory, even when traveling within their own development. Accordingly, we conclude that the District Court correctly determined that the Houston Lakeshore Area is wholly surrounded for purposes of annexation under *Calvert* and Title 7, chapter 2, part 45, MCA.

## CONCLUSION

¶31 For the foregoing reasons, we uphold the District Court's order granting the City's cross-motion for summary judgment and denying the Property Owner's motion for summary judgment.

¶32 Affirmed.

18

/S/ MICHAEL E WHEAT


We Concur:


/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA