Justice Laurie McKinnon, dissenting.
*809 ***356 ¶24 I find the Court's reasoning contradictory and incomplete.
¶25 Strauser financed her purchase of a mobile home and failed to make timely payments on approximately 66 occasions. RJC took no legal action against Strauser pursuant to the Agreement, but Strauser nevertheless sued RJC for failure to comply with RISA. Strauser sought a declaratory judgment that RJC could not collect finance charges because RJC allegedly violated RISA; she wanted the court to determine what amount remained owing under the Agreement. Strauser's claims for relief arise solely from RISA's various administrative provisions. The Legislature set forth a remedy for alleged RISA violations in § 31-1-212(2), MCA, which provides, "A retail buyer having reason to believe that [RISA] has been violated may file with the [D]epartment a written complaint setting forth the details of the alleged violation ...." Strauser never filed a complaint with the Department. We clearly held in Somers , ¶ 19, that the Legislature did not provide a private cause of action to determine whether alleged RISA violations had occurred.
¶26 Nonetheless, following a misapplication of the UDJA and Somers , the Court orders the District Court to "clarify whether the Agreement obligates Strauser to pay the finance charge and late fees assessed pursuant to the provisions of the Agreement, which Strauser may rely upon in the event of a default action filed against her ." Opinion, ¶ 20 (emphasis added). The Court remands this case "to the District Court to issue a declaratory judgment construing the legal rights and obligations of the parties under the Agreement ." Opinion, ¶ 22. Not only is it the Department's legislatively delegated authority to decide whether the parties violated RISA, i.e., whether the parties adhered to their legal rights and obligations under the Agreement, but the Court ignores the fundamental prerequisite to invoking the authority of a court: a justiciable controversy.
¶27 To begin, we recognized in Somers that the purpose of RISA was to establish an administrative process which authorizes "the Department to enforce its provisions." Somers , ¶¶ 12, 15. We explained the Department, in order to carry out RISA's provisions, may: adopt rules necessary to implement RISA provisions; perform investigations it considers necessary to ensure compliance with RISA; require licensure to engage in the business of a sales finance company; and deny, suspend, or revoke licenses for failing to comply with RISA provisions, defrauding any retail buyer to the buyer's damage, or fraudulent misrepresentation. Thus, Strauser's claim that she may utilize a declaratory judgment to determine (1) her rights under RISA in the context of the Agreement, and (2) "the validity of a contract ***357 defense" pursuant to RISA, should be seen for what it is: an attempt to bypass the Department's statutory responsibilities for enforcement of RISA and obtain an advisory opinion from this Court.[1]
¶28 Aside from the Court's flawed attempt to distinguish an action under the UDJA from a complaint resolving an alleged RISA violation, the Court commits another, perhaps more fundamental, error. Before a court may exercise jurisdiction under the UDJA, a justiciable controversy must exist. "Courts do not function, even under the [UDJA], to determine speculative matters, to enter anticipatory judgments, to declare social status, to give advisory opinions or to give abstract opinions." Houston Lakeshore Tract Owners Against Annexation, Inc. v. City of Whitefish , 2017 MT 62, ¶ 28, 387 Mont. 83, 391 P.3d 86. Indeed, this Court has "refused to *810 entertain a declaratory judgment action on the ground that no controversy is pending which the judgment would affect." Northfield Ins. v. Mont. Ass'n of Ctys. , 2000 MT 256, ¶ 10, 301 Mont. 472, 10 P.3d 813 (citation omitted).
¶29 The test of whether a justiciable controversy exists contains three elements:
First, a justiciable controversy requires that parties have existing and genuine, as distinguished from theoretical, rights or interests. Second, the controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument invoking a purely political, administrative, philosophical or academic conclusion. Third, [it] must be a controversy the judicial determination of which will have the effect of a final judgment in law or decree in equity upon the rights, status or legal relationships of one or more of the real parties in interest, or lacking these qualities be of such overriding public moment as to constitute the legal equivalent of all of them.
Murray v. Motl , 2015 MT 216, ¶ 13, 380 Mont. 162, 354 P.3d 197 (citation omitted). We apply the justiciable controversy test to actions for declaratory judgments to prevent courts, as here, from determining speculative or anticipatory matters and rendering abstract or advisory ***358 opinions.
¶30 In Brisendine v. Mont. Dep't of Commerce, Bd. of Dentistry , 253 Mont. 361, 363, 833 P.2d 1019, 1020 (1992), for example, a denturist sought a judicial declaration that he was not prohibited from entering into a professional relationship with a dentist while the issue was still pending before the Board of Dentistry. We upheld the district court's determination that no justiciable controversy existed because the complaint lacked specificity regarding his proposed business association and because Brisendine had not exhausted his administrative remedies. Brisendine , 253 Mont. at 365-66, 833 P.2d at 1021-22. We determined that an action for declaratory judgment while the underlying controversy was pending before an administrative board was premature and would only serve as an impermissible advisory opinion. Brisendine , 253 Mont. at 365, 833 P.2d at 1021.
¶31 In Hardy v. Krutzfeldt , 206 Mont. 521, 523, 672 P.2d 274, 275 (1983), the plaintiffs sought a judicial declaration that several preemptive rights of first refusal pertaining to real property were unreasonable restraints of alienation. We held that no justiciable controversy existed because the record did not reflect an intent by any party to sell property outside the first refusal clause; nor was any party seeking relief from the clause. Hardy , 206 Mont. at 525, 672 P.2d at 276. We explained:
No litigant before us is in immediate danger of sustaining direct injury from the preemptive clause. Therefore we do not have a justiciable controversy over which the judicial power to determine real controversies may be exercised. Broad language in the [UDJA] ... may not be used as a platform for courts in this state to plunge into indefinite amorphous ponds of contract interpretation.
Hardy , 206 Mont. at 525, 672 P.2d at 276.
¶32 In Northfield , ¶ 14, this Court held there was no justiciable controversy where insurance companies sought a declaration as to their rights under a contract and whether they had a duty to indemnify. We explained that no request for indemnification had been made and any determination of whether the contract imposed a duty to indemnify would require speculation that indemnification would eventually be sought. Northfield , ¶ 16.
¶33 Here, applying the test for justiciable controversies, Strauser's claim must fail. First, there is no actual dispute because RJC never sued to recover outstanding amounts owed under the Agreement. As in Northfield , ¶¶ 12, 14, the parties may disagree as to the obligations under the Agreement, but this does not rise to an "existing and ***359 genuine" dispute. Second, Strauser's claim is premised upon alleged violations of an administrative statute which are to be determined only by the Department. See Somers , ¶¶ 9-21. The Department has not made any determination that there were RISA violations and, like in Brisendine , 253 Mont. at 365-66, 833 P.2d at 1021-22, the administrative process has been ignored. Finally, by ordering the trial court to render an opinion on the application of *811 various RISA provisions to the instant facts and Agreement, Opinion, ¶ 22, the Court is ordering relief inconsistent with Somers and instructing the trial court to issue a speculative advisory opinion. Strauser is not entitled to a court's legal opinion of how RISA affects the enforceability of her contract. Strauser is entitled to bring a complaint against RJC to the Department.
¶34 I disagree that a party may file a lawsuit to determine the validity of a potential defense to an action that has not yet been filed. I disagree that a court should issue an advisory opinion regarding a potential dispute that the Legislature committed to an administrative agency for resolution. Lastly, I disagree that the UDJA applies and with this Court's advisory opinion under the guise that Strauser's rights are uncertain under the Agreement-Strauser has a remedy under RISA with the Department.
¶35 I dissent from the Court's decision holding otherwise.

This provision appears contrary to the default provision in the security agreement, which calls for a thirty-day cure period following the creditor's notice of default.